A. G. NASH et al., Appellants,

v.

J. V. CONATSER et al., Appellees.

No. 16830.

Court of Civil Appeals of Texas.

Dallas.

Dec. 30, 1966.

Dan Gibbs, of Gibbs, Hooks & Wyrick, Dallas, for appellants.

Joe A. Keith, Sherman, for appellees.

CLAUDE WILLIAMS, Justice.

This action was originally instituted by A. G. Nash and Mack W. Nelson, as plaintiffs, against J. V. Conatser and W. E. Conatser, doing business as J. V. Conatser Insurance Agency, as defendants, in which plaintiffs sought specific performance of an alleged memorandum of agreement dated December 1, 1965 for the sale of the personal and real property comprising the J. V. Conatser Insurance Agency located at 501 West Woodard Street, Denison, Texas. Bethel L. Conatser and Dorothy Weems Conatser, the wives of the original defendants, intervened in the action as defendants. By their first amended original petition plaintiffs joined Conatser Properties, Inc. and Joe Keith as defendants, alleging that subsequent to the filing of the original action the original defendants and intervenors had, with the idea and intention of placing certain assets belonging to the insurance agency out of the reach of plaintiffs, executed a deed from themselves to Conatser Properties, Inc., a Texas corporation such deed describing the real estate occupied by the insurance agency. Plaintiffs further alleged that contemporaneous with the delivery of said deed the corporation executed its deed of trust covering the property in question to Don Elliott, Trustee, to secure Joe A. Keith in the payment of one certain promissory note executed by such corporation in the amount of $30,000, such act on the part of the defendant corporation being a willful intent to place such property beyond the reach of the contract involved and for which specific performance was sought. It was further charged that defendant Joe A. Keith attempted to assign the note to Citizens National Bank of Denison, Texas and that such act on the part of the defendant Keith was an attempt to place the property of the insurance agency beyond the reach of plaintiffs. Plaintiffs again sought specific performance of the December 1, 1965 memorandum of agreement and further urged that each defendant should be "ordered to place such properties back in their original position at the date of the contract or make them available for the compliance of such contract." As an alternative prayer plaintiffs sought actual and exemplary damages against de-

fendants for their acts and conduct in allegedly breaching the contract sued upon. All defendants answered and set forth many legal and factual defenses.

Following nonjury trial judgment was rendered denying plaintiffs any relief. Plaintiffs appeal, contending that the judgment should be reversed because of nine errors. Inasmuch as each of appellants' points attempts to assail findings of fact made by the trial court we deem it necessary and advisable to here summarize the material and relevant findings of fact as well as conclusions of law based thereon.

## FINDINGS OF FACT

At all times material herein, the business known as J. V. Conatser Agency was an insurance agency owned solely by J. V. Conatser and his son, W. E. Conatser, but owned by them as part of the community estate of themselves and their wives. At all material times, legal title to the real estate upon which the insurance agency was located was owned one-third by J. V. Conatser and his wife Bethel L. Conatser, one-third by W. E. Conatser and his wife Dorothy Weems Conatser, and one-third by J. C. Conatser. That at all material times prior to the conveyance of said real property to Conatser Properties, Inc. the real property was part of the homestead of J. V. and W. E. Conatser and their respective wives. That the wives of J. V. and W. E. Conatser had refused to execute any conveyance to appellants of the real estate in question.

During the latter part of November 1965, and the early part of December. 1965, the J. V. Conatser Agency was in financial straits from the viewpoint of ready cash, in that it did not have at all times enough ready cash to meet all of its obligations and was behind in payments to various insurance companies. At all material times the business was solvent, from a book viewpoint, and made money consistently each year, and had net earnings, including amounts withdrawn by the partners, of a little less than $24,000 per year, for the period of five years beginning with 1961 and ending with 1965.

Negotiations with J. V. Conatser and W. E. Conatser with respect to the J. V. Conatser Agency began on November 23, 1965, when they were visited by the appellants and their attorney, Dan Gibbs. Previously, appellants had obtained balance sheets covering a period of about ten months ending with October 31, 1965, such revealing some figures shown on the books of J. V. Conatser Agency, but which did not contain any figures showing the value of the agency's insurance business in force, that is, the list of policy expirations, and did not contain any figures for the good will of the agency except an amount of $1,000. At that time appellees were informed by appellants that they were not interested in purchasing the agency in its entirety, and particularly advised that they were not interested in buying the accounts receivable of the agency. The negotiations at that time proceeded on the basis of an offer by appellants to purchase the specific assets of the agency, including the insurance in force (representing one and one-half times the average annual commissions received by the agency over the past three years), the building, equipment and fixtures, less mortgages and indebtedness, leaving a net balance of $51,600. Based upon such figures, appellants told appellees Messrs. Conatser that they would be willing to pay $50,000 in cash and pay the mortgage of about $11,800, with the understanding that the $50,000 would be placed in escrow to pay the accounts of the agency.

On December 1, 1965, a further meeting was held between the parties at which the above mentioned figures were reiterated and after consultation and negotiations appellants offered to raise the figure of $50,-000 to $52,000. The parties then discussed and agreed that the appellants would have complete legal papers drafted setting out the conditions and agreements which appellants desired to be included, and that

such papers would then be submitted to appellees for their consideration and in order to enable them to have such papers reviewed by their attorney and their accountant, all such papers to be agreeable to all parties.

As a memorandum of the matters involved, appellant Nash dictated to appellant Nelson in longhand the contents of the instrument identified as Plaintiffs' Exhibit 1 and Defendants' Exhibit 1, as follows:

"It is understood that we the undersigned hereby agree to sell to A. G. Nash and Mack W. Nelson the J. V. Conatser Agency located at 501 W. Woodard, Denison, Texas, under the following terms:

$52,000.00 paid to the Citizens National Bank in escrow, to pay all accounts of the Agency.

"Mr. Nash and Mr. Nelson will pay the mortgage on the building.

"The undersigned are to keep the Accounts Receivable.

"When the money is posted with the bank, possession is to commence December 1, 1965. Building is to be deeded as requested.

"/s/ J V Conatser
 J. V. Conatser
"/s/ W E Conatser
 W. E. Conatser

"Terms accepted by purchaser.

"/s/ A G Nash
 A. G. Nash
"/s/ Mack W Nelson
 Mack W. Nelson

"Dated ____12/1/65____."

———◆———

On December 6, 1965 appellants submitted to appellees three written instruments, identified as Defendants' Exhibits 2, 3 and 4 (being proposed contract of sale of the agency, escrow agreement and covenant not to compete), said instruments being signed by appellant Nash as well as by L. K. Busch and Dan Gibbs, who were not parties to the memorandum of December 1, 1965 and not parties to this suit. These instruments were never signed by appellant Mack W. Nelson nor were they ever executed by any of the appellees. Upon receipt of these papers appellees transmitted same to their attorney for his review and numerous objections were raised by such attorney. On December 10, 1965 appellants made arrangements to deposit in escrow $52,000 in the Citizens National Bank in Denison and also a checking account of $3,000. On that date they were informed that the proposed sale of the agency would not be consummated.

On December 16, 1965 appellees executed Articles of Incorporation of Conatser Properties, Inc. which were filed by the Secretary of State of the State of Texas on December 17, 1965. On December 18, 1965 they conveyed certain real estate to Conatser Properties, Inc. On the same date the corporation executed its promissory note for $30,000 in favor of Joe A. Keith and its deed of trust on the real estate to secure payment thereof. Keith borrowed $15,000 from Citizens National Bank and as security assigned to the bank the above mentioned note of Conatser Properties, Inc. The $15,000 was used to make payment to Home Insurance Company on the indebtedness of the agency of said company. The Messrs. Conatser invested additional money in the business with the re-

sult that all creditors of the agency were paid.

That the instrument of December 1, 1965 did not contain all of the essential terms of the proposal between the parties and was only a memorandum to be used to draw up the agreements to be proposed and considered. That Defendants' Exhibits 2, 3 and 4 not only contained terms and provisions in addition to those reflected by such instrument of December 1, 1965 but, moreover, various terms and provisions contained therein were at variance with those of such instrument of December 1, 1965 and at no time did appellees agree to the terms and provisions contained in Defendants' Exhibits 2, 3 and 4. That said memorandum of December 1, 1965 contained no description of real property, nor did it refer to any available writing in which such a description can be found, nor does it contain any key to such a description. That the terms of said memorandum claimed by appellants were not understood or agreed to by appellees, and the minds of the parties executing it did not meet with respect to the subject matter thereof or the essential terms thereof. That such memorandum of December 1, 1965 was and is incomplete and does not possess the attributes of a binding and legal contract.

Furthermore, at the time of the negotiations of November 23, 1965 and December 1, 1965 appellants represented to appellees that they were willing to and were offering to pay appellees $81,000 less ten per cent for the Conatser Agency's business in force, that is, the list of expirations. That appellees were induced to believe and did believe that appellants were offering to and were willing to pay them $81,000, less ten per cent for the agency's business in force, such belief being caused partly by appellants' representations to that effect, and also caused partly because of the confusing method of presentation followed by appellants in such negotiations. That appellees relied upon such representations in executing the instrument of December 1, 1965, and except for such belief

and reliance would not have signed such instrument. That such representation was untrue and was known by appellants to be untrue. That such was untrue because of appellants' efforts to deduct $56,000 for accounts receivable, notwithstanding that appellants' offer to purchase did not include accounts receivable. That the true offer which appellants made, but which was concealed from appellees and by which they were confused by such representation and presentation, was that appellants would pay $52,000 in cash, of which $28,200 was to be paid for the equity in the building ($40,000 less mortgage of $11,800), and which $6,500 was to be paid for equipment and fixtures, leaving only $17,300 to be paid for the insurance in force, that is, the list of expirations. That such offer was not fair or adequate. That appellees did not discover the falsity of such representation until December 8, 1965 when their attorney undertook to review the proposed instruments submitted to state clearly what assets were to be sold and the amount to be paid therefor. That appellees could not reasonably have discovered the falsity of such representation at an earlier date.

## CONCLUSIONS OF LAW

The memorandum of December 1, 1965 is incapable of enforcement and it would be inequitable to attempt to enforce it. Said memorandum is inadequate and insufficient either as a basis for specific performance or as a basis for plaintiffs' prayers for damages. That said memorandum of December 1, 1965 is void for uncertainty, and, as to the real estate which plaintiffs claim was covered thereby, it is void and unenforceable under Art. 1288, Vernon's Ann.Civ.St., commonly known as the Statute of Conveyances, and under Art. 3995, V.A.C.S., commonly known as the Statute of Frauds. That the terms of said memorandum claimed by plaintiffs in this suit were not understood or agreed to by defendants and the minds of the parties executing it did not meet with respect to the subject matter thereof or the

essential terms thereof. That such memorandum was and is incomplete and does not possess the attributes of a binding and legal contract, and is so indefinite as to make it impossible to fix a legal or equitable liability of the parties thereto. As reflected by the instruments identified herein as Defendants' Exhibits 2, 3 and 4 and by other evidence herein, various of the terms and provisions essential to the consummation of the proposed sale and purchase were not agreed upon, but were left open to future negotiation and to be agreed upon if possible, with the result that at the most, said memorandum of December 1, 1965 was an agreement to make an agreement. The granting of any relief based thereon would necessarily rest on guess or conjecture.

The instruments identified as Defendants' Exhibits 2, 3 and 4 contain provisions never agreed upon by the parties and they are therefore not subject to equitable enforcement and cannot constitute the basis of legal relief.

In view of the conveyance of the real estate to Conatser Properties, Inc., the subsequent mortgaging thereof and the assignment of such note and liens securing payment thereof to the Citizens National Bank of Denison, Texas (not a party to this litigation), it would be impossible to grant specific performance even if such remedy were otherwise justified, which it is not.

In view of the additional money invested during December 1965 by defendants and the change of its financial condition as a result thereof, it would be inequitable and unjust to grant specific performance as sought by plaintiffs even if such remedy were available, which it is not.

That defendants were induced to execute the memorandum of December 1, 1965 on the basis of false representation, known to be untrue by plaintiffs, and therefore defendants were fully entitled to decline and to refuse to consummate the proposed transaction on the basis of such untrue representation.

That the wives of the defendants were within their rights in declining and refusing to execute conveyances to plaintiffs covering the real estate in question for the additional reason that such property was a part of their homestead at the time involved and did not lose its homestead character while owned by said husbands and wives.

That plaintiffs have not suffered any compensable damages. That plaintiffs' expenditures of time and money following the signing of such memorandum of December 1, 1965 were based on their hope of making an agreement under which they could acquire the business of the agency and they were not misled or deceived into making such expenditures of time or money by any act or omission by, on the part of or attributable to, the defendants. That plaintiffs are not entitled to the relief sought by them herein and all relief is denied.

## ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

That there was no contract between plaintiffs and defendants; that the memorandum of December 1, 1965 was not a contract, and is not enforceable. That plaintiffs have suffered no compensable injuries.

That there is no evidence, or alternatively, the evidence is insufficient, to establish on any material date the reasonable cash market value in Denison, Texas or in the vicinity thereof, of the J. V. Conatser Agency, or any of the specific assests thereof, except only the reasonable cash market value at such place and time of the business in force of the agency, that is, the list of expirations, which, as shown by a finding above, had a fair value on December 1, 1965 of $81,000 less ten percent.

## OPINION

■ A proper determination of appellants' appeal is rendered somewhat difficult by the mode of attack utilized by appellants in their brief. While each of appellants' points of error begins with the

phrase "The court erred in finding", we find no reference in appellants' brief to the original or supplemental findings of fact and conclusions of law made by the court at the request of appellants. If these points are to be considered as attacks on the court's findings and conclusions they fail to comply with Rule 418(c). Vernon's Texas Rules of Civil Procedure, which requires (i) a fair, condensed statement of the facts pertinent to the points raised by an appellant, with reference to the pages in the record where the same may be found; and (ii) such discussion of the facts and authorities relied upon as may be requisite to maintain the point at issue. Only in Points 5 and 7 of appellants' brief are we advised that the attacks on the findings and conclusions are based upon a contention of "no evidence" or "insufficient evidence", or in fact, any other reason. While we entertain doubt that appellants have sufficiently complied with the rules to adequately assault the court's findings yet we, in a spirit of liberal construction of briefing rules, have attempted to determine from appellants' arguments contained in their brief the nature of their contention. We have carefully reviewed the entire record and have done so in the light of the rules as set forth In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. In arriving at the answer to the question of whether or not there is any evidence of probative force to support the findings on the part of the trial court we have reviewed the evidence in the light most favorable to the findings and disregarded that which is favorable to appellants. 4 Tex. Jur.2d, §§ 806–808, pp. 329–338; Barker v. Coastal Builders, Inc., 153 Tex. 540, 271 S.W.2d 798; Tips v. Gonzalez, Tex.Civ. App., 362 S.W.2d 422; Potter v. Garner, Tex.Civ.App., 407 S.W.2d 537.

 Preliminary to a discussion and disposition of appellants' points of error we set forth the following well established legal guidelines relating to the equitable remedy of specific performance which have application to this appeal:

(1) A decree of specific performance must be based on a valid completed contract that possesses the essentials of a binding legal obligation. It will not be granted where material terms of the contract were not agreed to but left to future adjustment. 52 Tex.Jur.2d, Specific Performance, § 24, pp. 545–546.

(2) A decree for specific performance of a contract is not a matter of right, but rests in the sound discretion of the court; a discretion not arbitrary but judicial, and exercised under the established doctrines and settled principles of equity. Bergstedt v. Bender, Tex.Com.App., 222 S.W. 547; Restatement of the Law on Contracts, § 359.

(3) The right to the remedy depends upon certain conditions: (a) The contract must be reasonably certain, unambiguous and based upon valuable consideration; (b) it must be fair in all its parts, free from misinterpretation, misapprehension, fraud, mistake, imposition or surprise; (c) the situation of the parties must be such that specific performance will not be harsh or oppressive; and (d) the one seeking the remedy must come into court with clean hands. Restatement of the Law on Contracts, § 367; Riggins v. Trickey, 46 Tex. Civ.App. 569, 102 S.W. 918; 52 Tex.Jur.2d, Specific Performance, § 68, pp. 606–607, § 69, pp. 608–609.

(4) Specific performance will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions of performance. The usual aids to interpretation may be utilized by the court to determine the true agreement of the parties. Restatement of the Law on Contracts, § 370; Bendalin v. Delgado, Tex.Sup.Ct., 406 S.W.2d 897; 12 Texas Law Review, 359–360.

(5) A court will not order specific performance of a contract for sale of land or interest therein unless the contract describes the land or interest, or within itself furnishes the means by which the property may be identified with reasonable certainty.

**520**

52 Tex.Jur.2d, Specific Performance, § 38, p. 562.

(6) Specific performance will not be decreed where it appears that performance of the contract by the defendant is impossible. Thus, where defendant does not own the land involved in the agreement he he may not be compelled to perform. 52 Tex.Jur.2d, Specific Performance, § 71, p. 610 and cases there cited; § 76, p. 618 and cases cited.

(7) As a general rule specific performance of a contract will not be decreed unless it can be completely enforced so as to secure substantially all that the parties contemplated at the time the contract was made. 52 Tex.Jur.2d, Specific Performance, § 72, p. 612.

(8) An executory contract for sale of homestead made by husband alone will not be specifically enforced as long as the homestead exists. It may be enforced as against the husband if the homestead is abandoned. 52 Tex.Jur.2d, Specific Performance, § 91, pp. 636–637; Lewis v. Brown, Tex.Civ.App., 321 S.W.2d 313.

(9) Equity, as a general rule, refuses to order specific performance of a contract relating to personal property. It is where remedy at law is inadequate that equity will enforce such relief. 52 Tex. Jur.2d, Specific Performance, § 95, p. 645; Green v. Hannon, Tex.Civ.App., 369 S.W. 2d 853.

With these general principles of law in mind we turn now to a consideration of appellants' points 1 through 4, inclusive, briefed together, wherein appellants contend that the court "erred in finding" (1) the contract incapable of enforcement; (2) the contract of December 1, 1965 was inadequate and insufficient for specific performance; (3) that the contract dated December 1, 1965 was not partially performed by plaintiffs; and (4) that the contract dated December 1, 1965 was void for uncertainty and unenforceable under Articles 1288 and 3995, V.A.C.S. Our review of

the record in the light of the rules above announced leads us to the conclusion that the trial court was justified in making the findings recited and therefore appellants' points are overruled.

We think that the essence of this appeal is contained in appellants' second point. Appellants having based their entire case upon a demand for specific performance of the memorandum agreement of December 1, 1965, they must stand or fall on such agreement. If such instrument signed by the parties is not, as found by the court, a binding contract, but nothing more than a memorandum of an agreement to make an agreement, then admittedly there can be no specific performance and appellants' case collapses. When the entire record is read in the light of controlling rules the conclusion is inescapable that the memorandum signed by the parties on December 1, 1965 is not a valid completed contract that possesses the essentials of a binding and legal obligation but is nothing more than an agreement to thereafter enter into a contract. Appellants in oral argument before this court agree that if the instrument signed by the parties on December 1, 1965 is nothing more than an agreement to make an agreement then same is not subject to specific performance. As stated by our Supreme Court in Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187:

"* * * if the contract meant that it would be nothing more than an agreement to make a contract in the future and such an agreement, there being no specification of the terms and details of the contract to be made is not enforceable."

Again our Supreme Court in Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940, said:

"It is essential to the validity of a contract that it be sufficiently certain to define the nature and extent of its obligations. If an agreement is so indefinite as to make it impossible for a court to

fix the legal liability of the parties thereto, it cannot constitute an enforceable contract."

A review of the record in this case clearly indicates many differences and variances between the original agreement of December 1, 1965 and the proposed contract contained in the three instruments submitted by appellants to appellees on December 8, 1965. It would unduly lengthen this opinion for us to recite the many areas of differences between the two agreements. Appellants candidly admit that the proposed final contract, never entered into between the parties, contains many material provisions not previously agreed to between the parties on December 1, 1965 or contained in that memorandum. We find ample evidence to support the trial court's finding that the December 1, 1965 memorandum was not such a contract that a court of equity could order specifically performed.

As to appellants' fourth point relating to the uncertainty of the memorandum agreement the evidence is abundant to support the trial court's finding relating to the applicability of Articles 1288 and 3995, V.A.C.S. The December 1st memorandum relates to "building is to be deeded as requested" and there is evidence that the building is located on a tract of land larger than the building. The December 1st memorandum itself is insufficient to properly describe the real estate involved and does not contain within itself sufficient data by which the particular land to be conveyed may be identified with reasonable certainty. Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150; Osborne v. Moore, 112 Tex. 361, 247 S.W.2d 498.

In their fifth point of error appellants contend that the trial court's finding of fact that there was no meeting of the minds of the parties with reference to the subject matter of the December 1, 1965 memorandum of agreement is contrary to all of the evidence before the court. This point is wholly lacking in merit for the reasons

heretofore discussed. The statement of facts is replete with evidence demonstrating that appellees J. V. and W. E. Conatser were laboring under one impression concerning the proposed sale while appellants were obviously relying upon different conceptions of the transactions. No useful purpose could be served by summarizing all of this testimony which is clearly conflicting and justifies the trial court to conclude, as he did, that there is no meeting of the minds of the parties concerning the material matters involved in the December 1, 1965 transaction.

The trial court's finding and conclusion that it would be inequitable and impossible to grant specific performance in this instance in the light of the various deeds and conveyances executed and monies invested subsequent to the date of the December 1, 1965 contract are justified by the evidence and by the law applicable thereto. At the time this suit was instituted title to the real property in controversy was not held by J. V. and W. E. Conatser but was owned by a corporation not a party to the original agreement and a mortgage covering said real estate had been pledged to a bank, not a party to this suit, for the security of a loan made for the specific purpose of enabling the insurance agency to better its financial position. Such facts reveal a posture of the parties and subject matter which rendered specific performance impossible.

The trial court found that the real property involved was a part of the homestead of the wives of J. V. and W. E. Conatser at the time they declined to convey it to appellants and that such property did not lose its homestead character while owned by said husbands and wives. This finding is clearly supported by the record and is not contested by appellants. However, it is quite clear from the record that when the real property was conveyed to Conatser Properties, Inc. it lost its homestead character. It is the law of this state that when, as in this case, a business home–

stead is conveyed to a corporation, the stock of which is owned by the grantors, these results follow, viz.: (a) the property is no longer the homestead of the grantors, even though they may continue to occupy it; (b) valid title is vested in the corporation; and (c) the property is subject to the debts of the corporation. Nowlin v. Wm. Cameron & Co., Inc., Tex.Civ.App., 54 S.W.2d 1035, writ ref.; Mayfield v. First State Bank, Tex.Civ.App., 19 S.W.2d 454. Accordingly, under such circumstances, the shares of stock of the corporation would be subject to the debts of the owners thereof. However, the issue of homestead claim becomes of no materiality in the light of the fact that there is a finding, supported by the record, that the alleged agreement of December 1, 1965 is of no force and effect and not subject to specific performance. Appellants' eighth point is overruled.

■ By their ninth point appellants assail the court's finding that appellants have not suffered compensable damages. As has been heretofore held, the contract relied upon is not susceptible to the remedy of specific performance. Furthermore, the trial court has found, and supported by the evidence, that there was no valid and binding contract between the parties. Therefore, it necessarily follows that there can be no recovery of damages.

"If the contract is insufficient it not only precludes recovery for specific performance but also for damages for the breach thereof. This is true because an 'action for damages for the breach of a contract is, in effect, an action for its enforcement, and the statute, in denying an action for its enforcement, likewise denies an action for damages for its breach.' Alworth v. Ellison, Tex.Civ. App., 27 S.W.2d 639, 640, writ refused." Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150.

■ Even if the law did not clearly preclude appellants from recovering damages for the alleged breach of an alleged contract appellants would still not be entitled to recover damages in this case because there is no evidence, or the evidence is wholly insufficient, to justify the rendition of damages. We find that the trial court's findings and conclusions that no compensable damages were established by the evidence are supported by the record.

■ While not determinative of the appeal nor controlling the result thereof we agree with appellants' seventh point of error wherein it is contended that there is no basis for the trial court's finding that the agreement of December 1, 1965 was entered into as a result of fraudulent or false representations. Our review of the record indicates that there is no evidence of probative force to justify the court's finding on the issue of fraud or false representation. True, the record reveals a confused state of facts but not such as to constitute legal fraud.

A careful analysis of the entire record in this case impels the belief that the trial judge exercised sound judicial discretion in denying the equitable relief of specific performance and that he was perfectly right in denying damages for the alleged breach of an agreement demonstrated not to be a binding, legal obligation.

Affirmed.