TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00724-CV






Roundville Partners, L.L.C. and Quintana Development Corporation, Appellants



v.



Stephen M. Jones and Frankie Sue Jones, Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 98-198-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING






 After a sale of real property was not consummated, appellants Roundville Partners,
L.L.C. and Quintana Development Corporation (1) filed suit against appellees Stephen M. and Frankie
Sue Jones seeking specific performance of a commercial earnest money contract. After both parties
moved for summary judgment, the district court granted the Joneses' motion and denied appellants'
motion. Roundville and Quintana appeal this district court order as well as the order denying their
motion to reconsider. Because we conclude that a genuine issue of material fact exists, we reverse
the district court judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 Prior to the parties' dealings that precipitated this dispute, the Joneses owned 22.53
acres of real property, encompassing Lots 1, 2, 3, 4, and 5 of a platted area known as the Henderson
Subdivision located in Round Rock in Williamson County. A house straddles one of the property
lines adjoining Lots 1 and 4. Other features of this acreage include a well and a barn on Lot 1, a road
easement, and wastewater, public utilities, drainage, and greenbelt easements. Lots 1, 2, and 5 abut
County Road No. 170. 

 After deciding to sell these five lots of real property, the Joneses entered into a listing
agent agreement with Robert Elder, a real estate broker, to assist them in locating a buyer. Elder
showed the Joneses' property to Michael Macs, a real estate investor with whom he had done
business in the past. Macs is the president and sole shareholder of Quintana. In June 1997, Quintana
executed an earnest money contract with the Joneses for the sale of their property. The parties
negotiated a purchase price of $1,800,000 based on an average valuation of $1.83 per square foot,
with $360,000 to be paid in cash at closing and the balance of the purchase price to be financed by
a long-term note payable to the Joneses. As the closing date of December 31, 1997 approached, the
parties agreed to divide this contract into two separate contracts, which the parties refer to as the
second and third contracts. (2) The Joneses needed to close on this date because they had planned to
use the proceeds of the sale in a simultaneous closing on a new house. The parties further agreed
to close the second and third contracts on December 31, 1997 and January 30, 1998, respectively. 
 The second contract is a residential earnest money contract that initially purported to
convey a portion of Lot 1 and all of Lot 4, namely, the real property on which the house is situated. 
The purchase price under this contract was $560,000, the balance due for the acreage conveyed
valued at $1.83 per square foot. Quintana agreed to pay $360,000 in cash and to execute a long-term
note to the Joneses for $200,000. 

 On December 31, 1997, the parties met at the offices of Alamo Title Company, which
had assigned one of its agents, Carolyn Stegall, to close this contract. At the closing, Macs learned
that a partial conveyance of Lot 1 might jeopardize the property's status as a platted subdivision and
cause the property's value to decrease significantly. The parties agreed to modify the property
description in the second contract to encompass only Lot 4 and to alter the property description in
the third contract to convey Lots 1, 2, 3, and 5. 

 Although the parties reduced the amount of property to be conveyed under the second
contract, they did not adjust the purchase price. Consequently, at the closing, the Joneses received
an amount, $560,000, that exceeded the fair market value of Lot 4, which was approximately
$68,000. At the closing, Quintana assigned the second contract to Roundville. 

 Because Roundville lacked sufficient cash to close the contract, the Joneses agreed
to restructure the financing for the $560,000 purchase price. As a result, Roundville paid the Joneses
$331,537.17 in cash, executed a long-term note for $200,000 to the Joneses as originally agreed, and
executed a second note for $6862.83 (3) to the Joneses. To satisfy the remaining down payment owed
to the Joneses, Roundville executed a third note to Elder, the Joneses' real estate broker. Elder
agreed to accept his sales commission in the form of a note from Roundville for $21,600. 
Roundville and the Joneses finalized the sale of Lot 4 on December 31, 1997, the date designated
in the second contract. 

 The third contract is a commercial earnest money contract that originally purported
to convey a portion of Lot 1 and all of Lots 2, 3, and 5. Consistent with the changes made to the
second contract, the parties modified the property description in the third contract to encompass Lot
1 in its entirety. In addition to deleting the language, "and a portion of Lot 1," the parties also struck
the language, "Henderson Subdivision, Round Rock, Texas." The property description in section
two of the contract then read simply "Lot 1, 2, 3, 5." 

 Section nine of the contract required that the parties close the sale on or before
January 30, 1998. This section provided that the parties could delay the closing date to permit a
party to cure any objections to the title or a survey and that the parties could postpone the closing
date up to fifteen days if necessary to allow the parties to comply with lender instructions. In
addition, section nine stated that if the closing did not take place by the scheduled date, the party who
was not in default could exercise the remedies enumerated in section fifteen of the contract. (4)
 The
parties further agreed in section twenty-three that "time is of the essence."

 Throughout the month of January 1998, the parties worked with Stegall to prepare
for the closing of the third contract. Meanwhile, the due date arrived for the second note that
Roundville had given the Joneses at the closing of the second contract. Roundville, who also owed
the Joneses $200,000 on the first note, did not pay the Joneses $6862.00 on January 13. (5) As the
deadline for closing approached, Stegall gathered the documents necessary to consummate the sale. 
The parties, however, did not close the sale under the third contract by January 30, 1998. (6)

 Shortly after the initial closing date, Macs signed an agreement purporting to extend
the closing date for the third contract, which was never executed by the Joneses. Both parties made
several subsequent attempts during the spring to close the third contract. Closing dates were set for
February 27 and then again for March 3, but the parties did not consummate the sale on either of
those dates. Macs and Elder arrived at Stegall's office for another closing date scheduled on March
27, but the Joneses did not attend. At that time, Macs signed the deed of trust and accompanying
real estate lien note. Another closing date was set for April 10, but that also did not take place. An
attorney representing the Joneses scheduled a closing date for April 17, which was later delayed to
April 20. This final attempt to close the third contract was also unsuccessful.

 As a result of the failure to close the third contract, in May 1998, appellants filed suit
against the Joneses, alleging claims for breach of contract, specific performance, fraud in the
inducement, common law fraud, statutory fraud, constructive trust, easement by necessity, by
implication, or by estoppel in pais, and promissory estoppel. Both parties moved for partial
summary judgment. See Tex. R. Civ. P. 166a(a), (c). Appellants moved for summary judgment only
on the issue of specific performance. The Joneses defended against these claims by asserting that
the third contract was unenforceable under the Statute of Frauds due to an insufficient property
description. The Joneses further contended that appellants had failed to tender performance and that
the contract had expired under its own terms. The Joneses also raised these two arguments in their
own motion for partial summary judgment. In June 1999, the district court rendered judgment
granting the Joneses' motion and denying appellants' motion.

 Meanwhile, in May 1999, Roundville filed for bankruptcy. Roundville attempted to
recover all monies conveyed to the Joneses under the second contract that exceeded the fair market
value of Lot 4, asserting that such amount was a fraudulent transfer (7) under federal and Texas law. 
See 11 U.S.C.A. § 548(a)(1)(B)(ii)(I) (West Supp. 2001); Tex. Bus. & Com. Code Ann. § 24.006(a)
(West 1987). After a bench trial, the bankruptcy court rejected Roundville's fraudulent transfer
argument. (8) Roundville, however, did obtain a discharge of its obligation under the $200,000 note
to the Joneses to the extent that it exceeded the fair market value of Lot 4. The Joneses did not file
a proof of claim.

 In June 2000, appellants filed a motion for reconsideration of the cross-motions for
summary judgment, which the district court also denied. Appellants next moved to nonsuit their
remaining claims against the Joneses. See Tex. R. Civ. P. 162. The district court granted this motion
and rendered its previous orders related to the motions for summary judgment final. See Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001). Seeking specific performance of the third
contract, appellants challenge the district court's orders on the motions for summary judgment and
on their motion to reconsider.


STANDARD OF REVIEW


 We review the propriety of a ruling on a motion for summary judgment de novo. See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). A traditional motion for summary
judgment is properly granted when the movant establishes that there are no genuine issues of
material fact to be decided and that it is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); see also Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). To prevail
on a motion for summary judgment asserting an affirmative defense, a defendant must prove each
element of the defense as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996). 

 Once a right to summary judgment is established, the non-movant must expressly
present any reasons avoiding the movant's entitlement and must support the response with sufficient
proof to establish a fact issue. (9) Friendswood Dev. Co. v. McDade+Co., 926 S.W.2d 280, 282 (Tex.
1996); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979). When a
defendant has alleged an affirmative defense with more than one element, the plaintiff must raise a
fact issue with respect to any element to overcome the asserted defense. See Kassen v. Hatley, 887
S.W.2d 4, 9 (Tex. 1994). A defendant, then, is not entitled to judgment as a matter of law on an
affirmative defense if the plaintiff produces evidence that reasonable minds could differ on any
material fact issue relevant to the defense. Id. Evidence is viewed in the light most favorable to the
non-movant with all reasonable inferences indulged and any doubts resolved in favor of the non-movant. Nixon, 690 S.W.2d at 548-49. 

 When both parties have filed motions for summary judgment and the district court

has granted one motion and denied another, as here, we review the summary judgment proof
presented by the parties, determine all questions presented, and render the judgment that the district
court should have rendered. See FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000); Commissioners Court v. Agan, 940 S.W.2d 77, 80 (Tex. 1997). In instances where the
district court does not state the basis for its summary judgment order, an appellant must negate all
grounds that support the judgment. State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374,
381 (Tex. 1993); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). If the appellant fails to negate
each ground on which the judgment may have been rendered, we must uphold the summary
judgment. See Carr, 776 S.W.2d at 569. 

DISCUSSION


 In their first issue, appellants argue that the district court erred when it denied their

motion for summary judgment because they are entitled to specific performance of the third contract
as a matter of law. In their second issue, appellants further argue that the district court erred when
it granted the Joneses' motion. The Joneses assert that appellants' motion was properly denied
because (1) the property description in the third contract is insufficient to satisfy the Statute of
Frauds, (2) appellants failed to tender performance of that contract, and (3) appellants have unclean
hands. We first consider whether appellants have conclusively established their entitlement to
specific performance.

 Specific performance is an equitable remedy that rests in the discretion of the court. 
Scott v. Sebree, 986 S.W.2d 364, 370 (Tex. App.--Austin 1999, pet. denied); Nash v. Conatser, 410
S.W.2d 512, 519 (Tex. Civ. App.--Dallas 1966, no writ). This Court has previously acknowledged
that this equitable remedy is frequently granted when a valid contract to purchase real property is
breached by the seller. Scott, 986 S.W.2d at 370 (citing Kress v. Soules, 261 S.W.2d 703, 704 (Tex.
1953)). A decree of specific performance is not a matter of right even to enforce terms of a contract,
but is "a matter of grace" in the discretion of the court. 14 Powell on Real Property § 81.04[1][c]
(Michael Allan Wolf ed., 2000).

 In Condovest Corp. v. John Street Builders, Inc., this Court followed the supreme
court's opinion in Langley v. Norris, 173 S.W.2d 454, 457-58 (Tex. 1943), which established that
a contract must be reasonably certain to be enforced by specific performance. Condovest Corp. v.
John St. Builders, Inc., 662 S.W.2d 138, 140 (Tex. App.--Austin 1983, no writ). We acknowledged,
however, that the supreme court had modified this rule when it stated that a written agreement for
which a party sought specific performance "'must contain the essential terms of a contract, expressed
with such certainty and clarity that it may be understood without recourse to parol evidence to show
the intention of the parties.'" Id. (quoting Wilson v. Fisher, 188 S.W.2d 150, 152 (Tex. 1945)). We
also adopted the following language delineating the conditions which must be met before a party has
a right to this equitable remedy:


(a) The contract must be reasonably certain, unambiguous and based upon valuable
consideration; (b) it must be fair in all its parts, free from misrepresentation,
misapprehension, fraud, mistake, imposition or surprise; (c) the situation of the
parties must be such that specific performance will not be harsh or oppressive; and
(d) the one seeking the remedy must come into court with clean hands.



Id. (quoting Nash, 410 S.W.2d at 519). 

 But in Bell v. Rudd the supreme court identified a threshold question to reaching the
merits of a party's claim for specific performance when it stated, "It is elementary that before a
grantee or obligee may assert any rights under an escrow contract he must show that he has complied
with the conditions of the escrow, or has offered to perform and was prevented without fault of his
own." Bell, 191 S.W.2d at 844 (emphasis added). Therefore, to prevail on their motion for summary
judgment, appellants are initially required to establish that they have complied with the conditions
of the escrow contract or that they offered to perform and had been prevented by another from doing
so. See id.

 Appellants assert that they have satisfied the prerequisite of tender because, at all
times including the present, they have been ready, willing, and able to tender performance on the
third contract. In addition to being ready, willing, and able to perform, the Joneses argue, appellants
must also show that they actually tendered performance, asserting that when a contract expires on
a certain date, performance must be tendered within the prescribed time. See Liedeker v. Grossman,
206 S.W.2d 232, 234-35 (Tex. 1947); Magram v. Lewis, 618 S.W.2d 420, 422-23 (Tex. Civ.
App.--Amarillo 1981, no writ). At the heart of the Joneses' argument is an undisputed
fact--appellants did not sign a deed of trust and a promissory note for the four lots to be conveyed
by the third contract on or before January 30, 1998, the date when the contract expired by its own
terms. Relying on information that the Joneses did not plan to attend a January 30, 1998 closing,
appellants contend that the law excepts them from the requirement of actual tender as it would
require them to perform a useless act. See Laredo Hides Co. v. H & H Meat Prods. Co., 513 S.W.2d
210, 200 (Tex. Civ. App. 1974, writ ref'd n.r.e.). We now determine what tender would have been
sufficient under these circumstances.

 Texas law is well-settled that a plaintiff asserting a claim for specific performance
must plead and prove his readiness, willingness, and ability to perform the contract in dispute even
if tender of the purchase price is excused. Burford v. Pounders, 199 S.W.2d 141, 144 (Tex. 1947);
American Apparel Prods., Inc. v. Brabs, Inc., 880 S.W.2d 267, 269 (Tex. App.--Houston [14th
Dist.] 1994, no writ); Claflin v. Hillock Homes, Inc., 645 S.W.2d 629, 635 n.4 (Tex. App.--Austin
1983, writ ref'd n.r.e.); Hendershot v. Amarillo Nat'l Bank, 476 S.W.2d 919, 920 (Tex. Civ.
App.--Amarillo 1972, no writ). The term "tender" means to notify the other party that one intends
to perform one's side of the bargain immediately or at a specific time and place and to demand that
the other party do likewise. Perry v. Little, 419 S.W.2d 198, 200-01 (Tex. 1967). In addition to
making an offer, tender also implies that the plaintiff is able to perform and has indicated that ability
to the other party. Id. at 200. This Court has acknowledged that, in cases in which the contract
obligations of the seller and buyer are mutual and dependent, tender serves the following two
purposes: 


(1) a valid tender of the purchase price invokes the seller's obligation to convey and
places him in default if he fails to do so; and (2) the tender satisfies the fundamental
prerequisite of specific performance--that the buyer show that he has done or offered
to do, or is then ready and willing to do, all the essential and material acts which the
contract requires of him. 



Wilson v. Klein, 715 S.W.2d 814, 821 (Tex. App.--Austin 1986, writ ref'd n.r.e.) (citations omitted). 

 Actual tender may be excused when acts of the defendant would render it "a useless
act, an idle ceremony, or wholly nugatory." Id. at 822 (emphasis omitted); Hendershot, 476 S.W.2d
at 920 (emphasis omitted); accord McMillan v. Smith, 363 S.W.2d 437, 442-43 (Tex. 1962);
Burford, 199 S.W.2d at 144-45. For example, when one party to a contract absolutely refuses to
perform his duties and obligations, the other party need not engage in a useless act of tendering
performance. Laredo Hides Co., 513 S.W.2d at 220. When actual tender is excused, constructive
tender may suffice. Burford, 199 S.W.2d at 144; Wilson, 715 S.W.2d at 822. In such instances, the
plaintiff is required to show an act of the defendant which would render actual tender useless and
that he was ready and willing to undertake the acts required and offered to perform such acts in his
pleadings. Burford, 199 S.W.2d at 144; Wilson, 715 S.W.2d at 822.

 But in Wilson, this Court also considered whether constructive tender of a purchase
price was legally sufficient to entitle a buyer to specific performance of a contract to convey land
when the parties have agreed that time is of the essence. Wilson, 715 S.W.2d at 821-23. In that case,
a dispute arose concerning the proper purchase price of 6.60 acres of land under the contract. Id. at
819. While Klein, the seller, was willing to convey the property at all times, Wilson, the buyer,
never actually tendered the purchase price. Id. at 818-19. In his suit for specific performance,
however, Wilson offered to pay Klein the amount that the court determined as the proper purchase
price. Id. at 819. This offer constituted a constructive tender. Id. 

 We observed, "The remedy of specific performance is not merely a judicial fiat
issuing from and governed by the judge's personal conscience, or his emotional feeling about what
is 'fair,' 'just,' and 'right' in the totality of the circumstances." Id. Rather, we stated the equitable
remedy of specific performance may be issued "only under and according to rules that are quite
explicit and well-established," recognizing further that "[i]t is the enforcement of these rules that
produces 'equity.'" Id. 

 After reciting the general rule that requires a party seeking this remedy to have made
an actual tender of the purchase price, we then acknowledged that such tender is excused when it
would constitute "a useless act, an idle ceremony, or wholly nugatory." Id. at 822. When actual
tender is excused, we noted, it is sufficient that the buyer was ready and willing to perform "and that
he offered to do so in his pleading for specific performance." Id. (emphasis omitted). Importantly,
in that case, the parties agreed that actual tender would not have been "a useless act, an idle
ceremony, or wholly nugatory." Id. 

 We further discussed a "more particular rule" regarding tender, which applies when
the parties have agreed that time is of the essence. Id. We held that in such instances only actual
tender will suffice to place a party in default even if it would require a party to perform a useless act. 
Id. at 823 (citing Liedeker, Ratcliffe v. Mahres, 122 S.W.2d 718 (Tex. Civ. App.--El Paso 1938, writ
ref'd), and Pomeroy's Equity Jurisprudence). We opined that when the parties have intended
timeliness to be an essential aspect of any obligation, right, or estate created in the contract, we may
not destroy that bargained-for stipulation, and we observed that to do so would create a new contract
with terms contrary to the original contract. Id. at 823. Because we determined Wilson's tender to
be insufficient, we affirmed the district court's judgment denying Wilson's claim for specific
performance. Id.

 As in Wilson, this case focuses on the question of what tender is sufficient when the 
disputed contract provides that time is of the essence. Unlike that case, however, the parties here
dispute whether actual tender would have required a useless act or an idle ceremony. The issue we
now consider, whether the defendant's actions prevented proper tender, was not before the court.

 Of the authority we relied on in Wilson for our holding requiring actual tender, the
supreme court's opinion in Liedeker v. Grossman may also be distinguished from this case while the
opinion in Ratcliffe v. Mahres proves instructive. In Liedeker, the supreme court reviewed a
judgment granting specific performance of a contract to convey land after an imperfect tender. 206
S.W.2d at 232-33. Although the purchaser executed the deed by the date specified in the contract's
time-is-of-the-essence clause, he did not agree to recognize that the property was conveyed subject
to a tenancy. Id. at 233. Reversing the court of appeals' judgment granting specific performance,
the court held: "Where time is of the essence of a contract, a party must perform or tender
performance in strict compliance with the provisions of the contract within the time prescribed, in
order to entitle him to specific performance." Id. at 234-35 (citing Ratcliffe, 122 S.W.2d at 718). 
In contrast with this case, the court in Liedeker was faced only with the question of whether the
buyer's imperfect tender was sufficient, rather than whether the seller's conduct prevented the buyer
from actually tendering under the contract.

 In Ratcliffe, the court of appeals considered a suit for specific performance on a
contract to convey an undivided interest in an oil well and certain oil leases. 122 S.W.2d at 721. 
The court noted that the language of the contract as well as the nature of the transaction indicated
that time was of the essence. Id. The court then stated that for Ratcliffe to obtain specific
performance, he had to show that he had complied with the contract obligations, or that compliance
was prevented by Mahres, attributing the rule governing these circumstances to Pomeroy's treatise,
Equity Jurisprudence. Id. at 721-22. After reviewing the evidence concerning Mahres's conduct
and noting that Ratcliffe had not produced evidence of facts sufficient to excuse his non-performance, the court concluded that Ratcliffe was not entitled to specific performance. Id. at 722. 

 In Wilson, we also recognized that "courts of equity 'have not been bound by strict
and inflexible rules.'" 715 S.W.2d at 822 (quoting McMillan, 363 S.W.2d at 442). In addition, after
addressing the need for actual tender in cases in which time is of the essence, Pomeroy also
acknowledges that this requirement "may be waived by conduct of the other party." 4 Pomeroy's
Equity Jurisprudence § 1407a, at 1052 (5th ed. 1941). Because we conclude that the opinions in
Wilson and Liedeker are distinguishable, we decline to hold appellants to the rigid standard of actual
tender in this case. This, however, does not relieve appellants from the burden to establish instead
that they offered to perform by the agreed upon date and were prevented by no fault of their own. 
See Bell, 191 S.W.2d at 844; Ratcliffe, 122 S.W.2d at 722. 

 Both parties agree that if the third contract had closed, the Joneses would have been
obligated to pay the tax liability on the property conveyed and appellants would have been required
to execute a deed of trust and a real estate lien note. Appellants admit that they did not comply with
the terms of the escrow, namely, signing a deed of trust and a promissory note for the four lots to be
conveyed by the third contract within the prescribed time; in other words, appellants concede that
they did not actually tender performance. Appellants' pleading for specific performance (10) contains
allegations that they were ready and willing to perform and an offer to do so. See Wilson, 715
S.W.2d at 822. Appellants are also required, however, to establish conclusively that they were
prevented from complying with the terms of the third contract by actions of the Joneses. See Bell,
191 S.W.2d at 844; Ratcliffe, 122 S.W.2d at 722.

 In support of their motion for partial summary judgment relating to specific
performance, appellants initially offered as evidence the affidavit of its representative, Michael
Macs; the deposition testimony of Stegall, Elder, and the Joneses; and copies of the three contracts
that the parties executed in relation to the Joneses' property. With respect to the third contract, Macs
avers in his affidavit that despite Quintana's desire to assign the contract to Roundville, this transfer
never took place because the Joneses did not attend the closing scheduled on March 27, 1998 and
thus did not give written consent to the assignment; that appellants were required to sign the required
closing documents, such as a real estate lien note and a deed of trust, and have made "numerous
attempts to close the Third Contract, both before and after January 30, 1998"; and that the Joneses
failed to close the contract on January 30, 1998 as required. In his second affidavit, attached to
appellants' second tender of supplementary summary judgment evidence, Macs accepts
responsibility for the handwritten edit of the third contract changing the closing date to March 27,
1998, but states that he made this change "after Defendant's agent, Robert Elder, expressly told me
that Defendants would not close on Contract 3 by January 30, 1998 nor perform their other
obligations under Contract 3."

 In further support of their motion, appellants offered the deposition testimony of
Stegall, Elder, and the Joneses. Although Stegall testified her records did not indicate, and she did
not recall, speaking with Mr. Jones between January 8 and January 30, 1998, she acknowledged that
she had spoken with all the parties to the closing numerous times during the month of January. 
When asked who had told her that the parties would not be able to close, she stated, "I'm assuming
Mr. Elder." Stegall further testified that she did not recall the details of why the closing did not take
place. In his deposition testimony, Elder recalled Mr. Jones informing him that the Joneses did not
have sufficient funds to close on January 30, 1998. Elder further testified that he informed Macs of
the potential problem with the closing and that it would be necessary to delay it. In his deposition,
Jones denies that he told Elder that he and his wife had insufficient funds for the January 30, 1998
closing. In his affidavit attached to the Joneses' response to appellants' motion, Jones also testifies,
"We did not refuse to close on Contract 3 on or before January 30, 1998 . . . ." 

 Summary judgment in Texas is intended to eliminate patently unmeritorious claims
and untenable defenses while giving due regard for the right to a factfinder's determination of
disputed fact questions. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989) (citations omitted). This
evidence presents contradictory accounts of the events leading up to the closing of the third contract.
Viewing this evidence in the light most favorable to the non-movants, the Joneses, we cannot say
appellants have conclusively established that the Joneses prevented them from complying with the
terms of the contract; therefore, we cannot say that their performance was sufficient to satisfy the
tender prerequisite to specific performance. Reconciling contradictory versions of factual events is
a task that a trier of fact should perform after an opportunity to determine and to weigh the credibility
of the testifying witnesses. Because we find that a genuine issue of material fact exists concerning
whether the Joneses acted in a manner that would have prevented appellants from performing,
rendering actual tender a useless act under the terms of this contract, we conclude that summary
judgment is not appropriate here on the present record.

 Appellants also seek to establish that actual tender would have been a useless act by
arguing that the note they were obligated to execute at the closing had not been prepared. 
Appellants' own summary judgment evidence does not support this assertion. Specifically,
appellants proffered the deposition of Stegall, the closing agent for the contract in dispute. Stegall
testified that she had arranged for an attorney to prepare the closing documents, including a note and
a deed of trust, in anticipation of the January 30, 1998 closing date for the third contract. Stegall's
testimony reflects that she identified each of these documents required for appellants to tender
performance, including the real estate lien note and the warranty deed with a vendor's lien, as well
as an invoice from the attorney who prepared these documents for Stegall, dated January 23, 1998,
as exhibits 21(a), 21(b), and 21(c) to her deposition, respectively. (11) Consequently, we reject this
argument.

 Because a fact issue exists regarding the prerequisite of tender, which prevents
appellants from conclusively establishing their entitlement to judgment as a matter of law on their
specific performance claim, we conclude that the district court did not err when it denied appellants'
motion for summary judgment. See Tex. R. Civ. P. 166a(c); see also Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985). Accordingly, we overrule appellants' first issue. 

 In their second issue, appellants argue that the district court erred when it granted the
Joneses' motion for summary judgment. Appellants rely on the same arguments offered in support
of their first issue to advance their position on the second issue. Appellants further maintain that,
even though they believe the summary judgment evidence established their right to summary
judgment, at a minimum, the evidence raises a fact issue as to the elements of their claim attacked
in the Joneses' motion.

 The Joneses moved for partial summary judgment with respect to appellants' claim
for breach of the third contract and specific performance, arguing that (1) the third contract is void
and unenforceable because it fails to contain a property description that satisfies the Statute of
Frauds, and (2) appellants failed to tender performance before the contract expired by its own terms
on January 30, 1998. Because the district court did not state the basis for its judgment, we must
affirm the grant of summary judgment if either of these grounds has merit. See State Farm Fire &
Cas. Co., 858 S.W.2d at 381; Carr, 776 S.W.2d at 569.

 Citing American Apparel Products, Inc. v. Brabs Inc., the Joneses argue that "[a]
party seeking specific performance must show that he or she performed or tendered performance of
his or her contractual obligations." 880 S.W.2d at 269. Relying on the supreme court's opinion in
Liedeker, the Joneses further assert that because the third contract had a certain date of expiration,
appellants were required to tender performance by that date. (12) 206 S.W.2d at 234-35. 

 In our disposition of appellants' first issue, we declined to hold appellants to the rigid
standard of actual tender in this case, but found that appellants still had a burden to establish that
they offered to perform and were prevented by no fault of their own. See Bell, 191 S.W.2d at 844;
Ratcliffe, 122 S.W.2d at 722. We concluded that summary judgment was not appropriate in this case
due to a genuine issue of material fact exists concerning the Joneses' actions and whether they
prevented appellants from complying with the terms of the third contract. This fact issue also
prevents the Joneses from conclusively establishing that they were entitled to summary judgment as
a matter of law. We now review whether the Joneses' second ground for summary judgment based
on the Statute of Frauds was meritorious.

 The Joneses argue that the third contract is void and unenforceable because it does
not satisfy the Statute of Frauds. Specifically, the Joneses assert that when Macs deleted the
language, "and a portion of Lot 1, Henderson Subdivision, Round Rock, Texas," he rendered the
property description insufficient. We disagree. 

 Contracts for the sale of real property are subject to the Statute of Frauds, which
requires that the contract be in writing and set forth the essential terms of the contract clearly. Tex.
Bus. & Com. Code § 26.01 (West 1987). A property description may be sufficient to satisfy the
Statute of Frauds if the writing furnishes, either by itself or by reference to some other existing
writing, the means or data by which the property may be identified with reasonable certainty. Texas
Builders v. Keller, 928 S.W.2d 479, 481 (Tex. 1996); Morrow v. Shotwell, 477 S.W.2d 538, 539
(Tex. 1972); Smith v. Sorrelle, 87 S.W.2d 703, 705 (Tex. 1935). The description is sufficient if an
individual familiar with the locality is able to identify the real property with reasonable certainty. 
Gates v. Asher, 280 S.W.2d 247, 248-49 (Tex. 1955); Templeton v. Dreiss, 961 S.W.2d 645, 659
(Tex. App.--San Antonio 1998, pet. denied). 

 In this case, appellants rely on the contract's reference to an existing seller's survey
dated March 12, 1992 to provide sufficient information which identifies the property with reasonable
certainty. The Joneses respond that the survey may not be considered because a party may only use
parol evidence to explain or clarify a facially acceptable property description, but not to supply or
create a valid property description. Texas Builders, 928 S.W.2d at 481; Morrow, 477 S.W.2d at 539. 
Furthermore, the Joneses state that the survey was not adequately referenced, but in any event would
not provide an adequate description because it is a perimeter survey.

 When the instrument contains the nucleus of a description, parol evidence may be

admitted. Gates, 280 S.W.2d at 248; Smith, 87 S.W.2d at 705. If the instrument contains enough
information "to enable one by pursuing an inquiry based upon the information contained in the . . . 
[instrument] to identify the particular property to the exclusion of others, the description will be held
sufficient." Templeton, 961 S.W.2d at 658 (citing Maupin v. Chaney, 163 S.W.2d 380, 383 (Tex.
1942)).

 Here, within its four corners, the third contract expressly states "Round Rock, Texas"
on the heading of each page, (13) and paragraph eleven states that the property has approximately 100
feet of frontage on Louis Henna Boulevard. Randall Jones, the surveyor retained by the Joneses,
testified in his deposition that he could identify the survey from the third contract. When asked to
disregard his personal knowledge of the Joneses, the surveyor explained the steps he would take to
identify and to obtain the survey based on the information contained within the four corners of the
third contract. We find that the third contract has a nucleus of a description and conclude the survey
referenced in the third contract could be considered to explain or clarify the property description. 
Because Jones, the surveyor, also admitted in his deposition that the survey provided sufficient
information to allow an individual to locate the property with reasonable certainty and discussed how
an inquiry would proceed, we hold that the property description in the third contract is sufficient to
satisfy the Statute of Frauds.

 We conclude that the Joneses have not conclusively established that the third contract
falls outside the Statute of Frauds, and thus not proven their entitlement to judgment as a matter of
law on this ground. Accordingly, we sustain appellant's second issue.


CONCLUSION


 Having sustained appellants' second issue, we reverse the district court's summary 
judgment and remand this case for further proceedings.



 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Reversed and Remanded

Filed: July 26, 2001

Do Not Publish

1. Quintana Development Corporation owns a seventy-percent interest in Roundville Partners,
L.L.C. and serves as Roundville's manager.
2. The reason for the restructuring of the deal is disputed. The Joneses state that Quintana
requested the change because it was short on cash for the closing. Roundville and Quintana contend
that the Joneses wanted the transaction split into two contracts for tax purposes. 
3. This note was due to be paid in full on January 13, 1998.
4. Section fifteen reads as follows:


DEFAULT: If Buyer fails to comply with this contract, Buyer shall be in default. 
Seller may either: enforce specific performance, seek other relief as may be provided
by law, or both; or terminate this contract and receive the Earnest Money as liquidated
damages, thereby releasing the parties from this contract. If Seller is unable without
fault to make any noncasualty repairs, deliver the estoppel certificates, or deliver the
Commitment within the time allowed, Buyer may either terminate this contract and
receive the Earnest Money as the sole remedy or extend the time for performance up
to 15 days and the Closing Date shall be extended as necessary. If Seller fails to
comply with this contract for any other reason, Seller shall be in default and Buyer
may either enforce specific performance, seek such other relief as may be provided by
law, or both; or terminate this contract and receive the Earnest Money, thereby
releasing the parties from this contract.

5. As a result, the Joneses accelerated the second note and later took steps to foreclose on Lot
4, which secured the note. Roundville satisfied the entire amount due on the note just before the
foreclosure sale on June 2, 1998.
6. According to the third contract, the total sales price for Lots 1, 2, 3, and 5 was $1,240,000. 
Of this amount, Quintana was only required to pay $2500.00 in cash to secure the contract. The
Joneses agreed to finance the remainder of the purchase price, $1,237,500, with a long-term note. 
7. A transfer may be fraudulent if a debtor made the transfer without receiving a reasonably
equivalent value in exchange and the debtor was insolvent or became insolvent because of the
transaction. 11 U.S.C.A. § 548(a)(1)(B)(i), (ii)(I) (West Supp. 2001); Tex. Bus. & Com. Code
Ann. § 24.006(a) (West 1987).
8. The bankruptcy court judgment was rendered after the state district court initially rendered
judgment on the motions for summary judgment, but was presented to the state court as evidence in
support of appellants' motion for reconsideration. The bankruptcy court's judgment was affirmed
on appeal to a federal district court and to the United States Court of Appeals for the Fifth Circuit.
9. The burden of proof, however, does not shift to the non-movant. Casso v. Brand, 776 S.W.2d
551, 556 (Tex. 1989).
10. The live pleading at the time of summary judgment was appellants' third petition. In
paragraphs fifteen and sixteen, appellants assert that they were, and remain, ready, willing, and able
to close the third contract.
11. These deposition exhibits are not attached to Stegall's testimony and are not included
elsewhere in the record. Stegall's testimony reflects that exhibit 21 was a folder containing various
documents, none of which are included in the record.
12. Because appellants expressly stated during oral argument that their claim was not based on
repudiation of the third contract, we need not address the Joneses' arguments that Elder had no
authority to repudiate the third contract or to inform appellants that the Joneses had done so; that the
statements attributed to the Joneses do not amount to anticipatory repudiation; that appellants were
not excused from their duty to perform even if the Joneses had indicated they would not perform the
third contract; and that if there was an anticipatory breach, it was justifiable. 
13. The Joneses assert that the property conveyed by the third contract is not located in Round
Rock, Texas, providing us with two cites to the clerk's record to support this contention. The first
cite directs us to the first affidavit of Michael Macs and the second cite directs us to the referenced
survey. After reviewing this evidence, we fail to see how either document supports the Joneses'
statement that the property is not located in Round Rock, Texas.


"N_1_">1. Quintana Development Corporation owns a seventy-percent interest in Roundville Partners,
L.L.C. and serves as Roundville's manager.
2. The reason for the restructuring of the deal is disputed. The Joneses state that Quintana
requested the change because it was short on cash for the closing. Roundville and Quintana contend
that the Joneses wanted the transaction split into two contracts for tax purposes. 
3. This note was due to be paid in full on January 13, 1998.
4. Section fifteen reads as follows:


DEFAULT: If Buyer fails to comply with this contract, Buyer shall be in default. 
Seller may either: enforce specific performance, seek other relief as may be provided
by law, or both; or terminate this contract and receive the Earnest Money as liquidated
damages, thereby releasing the parties from this contract. If Seller is unable without
fault to make any noncasualty repairs, deliver the estoppel certificates, or deliver the
Commitment within the time allowed, Buyer may either terminate this contract and
receive the Earnest Money as the sole remedy or extend the time for performance up
to 15 days and the Closing Date shall be extended as necessary. If Seller fails to
comply with this contract for any other reason, Seller shall be in default and Buyer
may either enforce specific performance, seek such other relief as may be provided by
law, or both; or terminate this contract and receive the Earnest Money, thereby
releasing the parties from this contract.

5. As a result, the Joneses accelerated the second note and later took steps to foreclose on Lot
4, which secured the note. Roundville satisfied the entire amount due on the note just before the
foreclosure sale on June 2, 1998.
6. According to the third contract, the total sales price for Lots 1, 2, 3, and 5 was $1,240,000. 
Of this amount, Quintana was only required to pay $2500.00 in cash to secure the contract. The
Joneses agreed to finance the remainder of the purchase price, $1,237,500, with a long-term note. 
7. A transfer may be fraudulent if a debtor made the transfer without receiving a reasonably
equivalent value in exchange and the debtor was insolvent or became insolvent because of the
transaction. 11 U.S.C.A. § 548(a)(1)(B)(i), (ii)(I) (West Supp. 2001); Tex. Bus. & Com. Code
Ann. § 24.006(a) (West 1987).
8. The bankruptcy court judgment was rendered after the state district court initially rendered
judgment on the motions for summary judgment, but was presented to the state court as e