## RATCLIFFE v. MAHRES et al.
### No. 3768.

Court of Civil Appeals of Texas. El Paso. Oct. 27, 1938.

On the Merits Dec. 1, 1938.

Rehearing Denied Dec. 15, 1938.

Dewey Young, of Dallas, and J. E. Quaid, of El Paso, for appellant.

T. F. Slack, Hudson & Hudson, and Hubbard & Kerr, all of Pecos, and William D. Orem and Scott W. Key, both of Houston, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellees.

PER CURIAM.

Appellees have filed motion to strike the brief of appellant because it was filed late. The brief was filed October 14, 1938. It should have been filed seven days earlier. Appellees were entitled to have the period elapsing between October 7th and October 29th in which to study the brief of appellant and make reply thereto (Rule 36 governing Courts of Civil Appeals). This is a valuable right and were the circumstances such that it was seriously impaired by appellant's tardiness, we should unhesitatingly strike the latter's brief. However, we can save appellees' rights without doing this. Since the members of the Court must be in San Antonio for several days beginning November 7, 1938, to hear oral argument in transferred cases, it is apparent that the record cannot be considered until November 14th. The motion to strike is, therefore, overruled; and the Court of its own motion hereby grants appellees until November 12, 1938 to file their reply brief. In the meantime the case will be submitted on November 3, 1938 and oral argument heard on that day unless appellees file a motion asking for postponement to a later day.

On the Merits.

NEALON, Chief Justice.

The nature of this suit is stated by appellant in the following language: "This is a suit for specific performance brought by plaintiff, H. C. Ratcliffe, against C. H. Mahres, Kenneth Slack, Van McPhail, D. D. Yard, Sidney Harris, J. A. Faddell, A. Theodore, Michigan Gas & Oil Corporation (herein sued as Michigan Gas & Oil Company), O. H. Randel, Shell Petroleum Corporation, Oil State Exploration Company, Mrs. E. R. Wurtz, J. E. Westover, A. C. Riley, and Bells Wells Oil Company, defendants, on a written contract dated January 30th, 1937, executed by plaintiff Ratcliffe and defendant Van McPhail, assignees and defendant C. H. Mahres, lessee." The purport of the contract declared upon, as interpreted by plaintiff, was stated in his petition and a copy attached to that pleading. From the contract it appears that on January 30, 1937, C. H. Mahres, hereinafter referred to as "Lessee," and Van McPhail and H. C. Ratcliffe, hereinafter referred to as "Assignees," entered into an agreement reciting that "Lessee" held leases for oil and gas on certain described lands and was drilling an oil well on a drilling block consisting of the west one fourth of the south one fourth and the south one fourth of the west one fourth of Section 133, Block 34, H. & T. C. Ry. Co. survey, in Ward County, which well and contract are referred to in this language: "which is now drilled to the depth of 3250 feet, and the 'Lessee' agrees to drill same to and through the black lime known as the Delaware lime or, if not encountered before such depth, to the depth of 4850 feet unless oil or gas in commercial quantities be

developed at a lesser depth." The contract further recited that "Assignees" desired to purchase and the "Lessee" desired to sell "Assignees" an undivided one-half interest in said well and said drilling block and oil and gas leases on certain other described lands, included among which were portions of two sections, the leases upon which were referred to as being numbered 8 and 10; and that all of the leases except those numbered 8 and 10 were subject to immediate delivery, while those numbered 8 and 10 were deliverable upon the completion of said well. By the terms of the contract the "Lessee" agreed to sell and "Assignees" agreed to buy and pay for a one-half interest in said well completed to the depth aforesaid, one-half interest in said drilling block and the assignment of oil and gas leases covering the lands described in the contract for a price of $11,000. "Lessee" agreed to execute and deliver in escrow to the First National Bank of Pecos, Texas, assignments of said oil and gas leases, with the name of the assignees in blank with authority to "Assignees" to fill in in each case the name of the person to whom it was to be assigned, if and when "Assignees" became entitled to the delivery thereof. The contract provided specifically that said payment of $11,000 was to be made on or before March 5, 1937, and that the deposit in First National Bank of Pecos, Texas, within said time for the account of "Lessee" of purchase orders payable "at the bottom of the hole" by responsible purchasers satisfactory to the "Lessee" should be accepted by the latter as part payment of the $11,000, conditioned upon the full and final payment of said last named sum within said time or within an extension of time as in said lease provided. The extension was provided for in paragraph 14 of the contract, which recited that it was understood that delay rentals on some of the leases would be payable on March 24, 1937, and in the event "Assignees" should not have completed the payment of $11,000 on or before March 5, 1937, then their time should be ipso facto extended to and including March 25, 1937 upon the payment to the "Lessee" by "Assignees" of the sum of $1200 for use as rental payments. "Lessee" agreed to continue drilling said well to completion at his own cost and expense and without expense or charge to the "Assignees"; but in the event commercial production should be obtained the "Assignees" agreed that they should be charged with one-half of the cost and expense of shooting said well and one-half the cost of the purchase and running of the production string of casing, the tubing therefor, tanks, flow-lines and other equipment, and one-half of all operating expenses thereafter, for all of which said one-half interest of "Assignees" in the well and drilling site should stand charged. "Lessee" agreed to furnish to the "Assignees" on their demand therefor for examination "any and all abstracts he now has covering the lands above described including said drilling site, which abstracts the assignees, should they desire to have same supplemented, may obtain supplements but shall do so at their own cost and expense and without expense or charge to 'Lessee.'" "Assignees" further agreed to cause the titles to said lands to be examined as to the oil and gas lease rights and deliver to the "Lessee" any and all objections to title pointed out by their attorneys. It was provided that "Lessee" should have a reasonable time for the correction of such objections, if any.

As collateral security for the performance of the agreement of "Assignees" to pay $11,000 as aforesaid, "Assignees" deposited in escrow with said bank the promissory note of Walter H. Nelson for $12,500, payable to the order of appellant and certain described warehouse certificates, with the agreement that when "Assignees" should have placed in said bank within the time provided the sum of $11,000 in cash or purchase orders, then said collateral should be returned to appellant; but that in the event the "Assignees" should not have placed in said bank "on or before March 5, 1937 the entire purchase price of $11,000 in money or purchase certificates * * * and should not have extended this agreement by payment on or before March 5, 1937 of $1200, the collateral security should become the property of 'Lessee' as liquidated damages, and any money or purchase orders theretofore deposited in the bank should be returned to 'Assignees,' their heirs or assigns," and "Lessee" should have returned to him the assignments of leases and "shall be at no further liability hereunder to the 'Assignee.'" It was further provided that in the event "Assignees" extended the time of payment by making the payment of $1200 as provided, the "Lessee" should proceed in due course for the collection of said note for $12,500, and when it was collected on or before March 25, 1937 and amounted to more than $11,000, "or such an amount as added to any

moneys and/or purchase orders so deposited in said bank shall amount to as much as $11,000, such part of the proceeds of said note as are necessary therefor to make $11,000 shall be paid to the lessee, and the balance, if any, shall be paid to said H. C. Ratcliffe"; that should the note not have been collected in whole or in part sufficient for said purposes, the amount collected should be paid to "Lessee" as liquidated damages for the breach of the agreement, and the note with the amounts of collections credited thereon should be assigned to Ratcliffe without recourse on "Lessee," and the "Assignees" should have returned to them any and all money or purchase orders then on deposit in the bank, and the assignments of leases deposited under the agreement should be returned to "Lessee," and "Lessee" should be under no further liability to "Assignees." It was also agreed that should "Assignees" fail to meet their obligations with respect to depositing the purchase price in the bank the note and other collateral should become the property of "Lessee" as liquidated damages and any moneys or purchase orders deposited in the bank by "Assignees" should be returned to them.

Van McPhail did not join as party plaintiff but was, as stated, joined as a party defendant. Plaintiff alleged the value of the leases to be one million dollars. As to other defendants than Mahres, McPhail and Slack it was alleged that title claimed by them by virtue of conveyances from Mahres was subordinate to the claim of plaintiff.

Each of defendants claiming under Mahres pleaded not guilty and by cross-action and trespass to try title sought to recover title and possession of his or its respective estates.

Arthur G. Miller intervened claiming one-half interest with Ratcliffe in the contract. He did not appear at the trial, however. McPhail, Slack and Mahres pleaded general exceptions and general denial. The case was tried to a jury. At the close of the evidence the court instructed a verdict in favor of all defendants except Arthur G. Miller and A. Theodore. As to the former judgment was rendered in favor of all defendants and of plaintiff. The suit was dismissed as to the latter. Judgment was rendered that plaintiff take nothing against any of the defendants not dismissed from the suit, except Miller, and that those claiming as assignees of leases executed by Mahres recover under their cross-actions. Plaintiff appealed.

## Opinion.

■■ The remedy sought in this case is specific performance. The alleged obligation sought to be enforced is an alleged contract of defendant Mahres to convey to plaintiff and defendant McPhail an undivided one-half interest in an oil well and in certain oil leases. The contract under which plaintiff seeks this recovery imposed upon plaintiff and McPhail the obligation of depositing in the First National Bank of Pecos on or before March 5, 1937, the sum of $11,000, with the qualification that the time of making complete payment should be extended to March 24, 1937 in the event that on or before March 5, 1937 "Assignees" should pay to the "Lessee" for use as rentals the sum of $1200. It was expressly recited in the contract that delay rentals on some of the leases would be payable on March 24, 1937, and that said sum of $1200 was to be used to satisfy these rental obligations. The obligation to deposit cash might be satisfied or the amount required reduced by the deposit of purchase orders satisfactory to Mahres. The contract by its terms demonstrates that the property involved was one of uncertain value. Apparently it had not yet been proved to be oil-bearing property. The well which would test its potentialities was in process of being drilled. The property, therefore, was one as to which values might fluctuate rapidly. The form of the contract as well as the character of the property evidenced indisputably that time was of the essence of the contract. For plaintiff to be entitled to the remedy of specific performance it was necessary to show that he complied with his contract obligations, or that compliance was prevented by the conduct of Mahres. The rule governing such cases is thus stated by Pomeroy:

"Time may be essential. It is so whenever the intention of the parties is clear that the performance of its terms shall be accomplished exactly at the stipulated day. The intention must then govern. A delay cannot be excused. A performance at the time is essential; any default will defeat the right to a specific enforcement. Time material: Although time is not ordinarily essential, yet it is, as a general rule, material. In order that a default may not defeat a party's remedy, the delay which occasioned it must be explained and accounted for. The doctrine is fundamental that a

party seeking the remedy of specific performance, and also the party who desires to maintain an objection founded upon the other's laches, must show himself to have been 'ready, desirous, prompt, and eager.'" Sec. 1408, 3d Ed., Pom.Eq.Jur.

These principles have been long recognized and respected by the Courts of Texas. See DeCordova v. Smith's Adm'x, 9 Tex. 129, 58 Am.Dec. 136; Hopkins v. City of Dallas, Tex.Civ.App., 297 S.W. 347

Plaintiff produced no evidence of facts sufficient to excuse his non-performance of his obligations and authorize the grant of the relief that he seeks. He sought to excuse performance by showing that abstracts of title and certain leases in blank had not been deposited in the bank. His contract called for such abstracts as Mahres "had." It was not shown that Mahres had in his possession or under his control any abstracts of title. It appears that his attorneys, when he contracted for his leasehold rights, examined the abstracts of the owners of the soil. Nor does it appear that there was any real demand upon the part of plaintiff for abstracts. He testified merely that Mahres or his representatives were to inform him when the abstracts were ready. He did not communicate either with defendant Mahres or his attorneys further. He never inquired at the bank as to whether the abstracts or the other papers had been deposited there. In fact he indicated to defendant and his attorneys that it was satisfactory that they be retained in the possession of the attorneys for a time. It is not shown that the failure to deposit them interfered in any manner with his plans with respect to disposing of leasehold interests or otherwise acquiring the funds with which to make the required payments.

■ It is to be noted that there was no contract obligation upon the part of plaintiff to conclude the purchase. He acquired the right to make the purchase by entering into the contract and depositing the described collateral to secure the performance of his obligation, with the understanding that upon his failure to perform, the collateral so deposited should become the property of Mahres as liquidated damages. It cannot be said as a matter of law that the value of the securities so deposited was so great that this stipulation as to liquidated damages was unreasonable. In fact it is not certain that the collateral possessed substantial value. Nelson executed the note and transmitted it to Ratcliffe that it

might be discounted for cash by or through Ratcliffe. The letter of transmission did not authorize it to be deposited as collateral to secure the payment of Ratcliffe's obligation, and when the note was forwarded through banking channels for collection it was permitted to go to protest. The value, if any, of the warehouse certificates was not shown. Just what damages, if any, would have accrued to Mahres by reason of the refusal or neglect of plaintiff to perform a contract of purchase with respect to property of the character involved would indeed be difficult to estimate. The contract was explicit in providing that in the event Ratcliffe failed to make the payments provided for within the specified time, the only recourse of Mahres was against said note for $12,500 and said certificates. He could not compel Ratcliffe to complete the purchase and pay the agreed price. Indeed there was an express obligation to limit his remedy to the forfeiture of the collateral; and to refund to Ratcliffe any cash the latter might have deposited and return to him any purchase orders he might have left in the depository. Since, then, there was no mutuality of remedy and this lack of mutuality was not supplied by a performance of those acts upon the part of plaintiff which were conditions precedent to his right to a conveyance, no right to the remedy of specific performance arose: Goodwin, Inc., v. Stuart, 125 Tex. 212, 82 S.W.2d 632; Parrish v. Weber, Tex.Civ. App., 17 S.W.2d 106; Richardson v. Terry, Tex.Civ.App., 212 S.W. 523.

■ Plaintiff assigns as error the entry of judgment in favor of claimants of title under Mahres upon their cross-action in trespass to try title, asserting that these various defendants did not prove that they were innocent purchasers for value without notice of plaintiff's alleged rights. This objection to the court's action is not sound. The contract between plaintiff and McPhail on the one hand and Mahres on the other was executed January 30, 1937. Plaintiff having failed to make deposit of $11,000 or the alternative payment of $1200 on or before March 5, 1937, Mahres gave notice on March 12, 1937 of the termination of plaintiff's right to buy under the contract. The notice was given to plaintiff's associate, McPhail. Plaintiff admits receiving this notice March 16, 1937. He recorded his contract April 19, 1937, more than one month after receiving said notice. Part of the title acquired under Mahres

was conveyed by him prior to the recording of the contract. However, as to all the defendants claiming under assignments of leases from Mahres and the attacks made upon the validity of their titles by plaintiff, it must be said that the contentions of appellant are without merit. Mahres was shown to be the common source of title. If appellant had any claim it was of an equitable nature. The claims of these various defendants were based upon conveyances of legal title. The burden was therefore upon appellant to show that the claimants were not innocent purchasers for value and without notice. This he did not do. Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371; Knox v. Brown, Tex.Com. App., ·277 S.W. 91; Slaughter v. Coke County, 34 Tex.Civ.App. 598, 79 S.W. 863; Elliott v. Wallace, Tex.Com.App., 59 S.W. 2d 109; White v. Hix, Tex.Civ.App., 104 S.W.2d 136; Godley Lumber Co. v. Teagarden, Tex.Civ.App., 135 S.W. 1109; 105 Tex. 616, 154 S.W. 973; 31 Tex.Jur. p. 380; 43 Tex.Jur. p. 689.

We find no reversible error in the record. The judgment of the trial court is affirmed.