

# NUMBER 13-08-00432-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

GAR GIL, L.L.C.,                                                     **Appellant,**

**v.**

ARNOLD BENSON,                                                          **Appellee.**

**On appeal from the 138th District Court of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

Appellant, Gar Gil, L.L.C., filed an action for breach of a real estate contract, seeking specific performance. The case was tried to a jury, and a verdict was rendered in favor of appellee, Arnold Benson. On appeal, Gar Gil argues that: (1) the trial court erred in determining that the contract was ambiguous as to whether time was of the essence; (2) the evidence supporting the jury's finding that Gar Gil was not "ready, willing,

and able to perform the contract" is factually insufficient; and (3) the trial court erred in concluding that Benson was the prevailing party and awarding Benson attorney's fees. We affirm in part and reverse and render in part.

## I. BACKGROUND

Gar Gil is a development company that develops properties to sell as individual residential lots. On or about September 30, 2005, Benson entered into a standard, written farm and ranch contract to sell to Gar Gil a 15.763-acre tract of land located in Cameron County, Texas. Prior to executing the contract for the 15.763-acre tract of land, Gar Gil and Benson entered into a separate contract for the sale of approximately 120 acres.[1] On September 30, 2005, Gar Gil and Benson closed on the 120-acre tract of land. Gilberto V. Garcia, member and president of Gar Gil, testified that on September 30, 2005, Gar Gil had the purchase money for both properties and that the title company, Sierra Title Company ("Sierra"),[2] had the funds for both tracts of land. Garcia further testified that at the closing for the 120-acre tract, Benson requested that the parties delay the sale of the 15.763-acre tract for one year from September 30, 2005, so that Benson could receive a more favorable tax treatment on the proceeds from the sale. Garcia stated that Gar Gil agreed to close on the 15.763-acre tract on September 30, 2006.

Despite the alleged agreement to close on the 15.763-acre tract on September 30, 2006, the written contract covering the land indicated that the closing date would be on

[1] On appeal, Gar Gil contends that the purchase of the 120-acre tract of land was conditioned on the subsequent sale of the 15.763-acre tract. In support of this contention, Gar Gil directs us to the testimony of Gilberto V. Garcia. However, in his testimony, Garcia did not state that the purchase of the 120-acre tract was conditioned on the sale of the 15.763-acre tract.

[2] Initially, Sierra was a party to this matter; however, Sierra was later non-suited.

August 11, 2006.[3] The parties did not close on the contract on August 11, 2006. Gar Gil alleges that Sierra was not ready to close on that date, and that Sierra did not call either party to apprise them of the situation. Neither Benson nor Gar Gil showed up for closing, and Gar Gil did not deposit any money with Sierra at that time. Sierra subsequently gave Gar Gil the title commitment to the land on August 29, 2006.[4]

Realizing that the August 11, 2006 closing date had come and gone and that Benson allegedly had not indicated a desire to terminate the contract, Gar Gil tendered the full purchase price of $200,000 for the land on September 7, 2006, to be held in escrow by Sierra.[5] Benson refused to perform his part of the contract after Gar Gil tendered the full purchase price for the land, and Benson sought to terminate the contract. Several days after tendering the purchase price for the land, Gar Gil took possession of the land; however, Benson refused to convey fee simple title to the land to Gar Gil.[6] Gar Gil currently maintains possession of the land and has made several improvements to the land.

Gar Gil sued Benson for breach of contract and promissory estoppel, seeking specific performance. Benson counterclaimed, arguing that Gar Gil breached the September 30, 2005 contract by: (1) failing to close on the land on or before August 11,

---

[3] Gar Gil and Benson initialed each page of the contract covering the 15.763-acre tract of land, acknowledging that they understood the terms of the contract and that they agreed to be bound by the contract.

[4] Paragraph 6(B) of the contract provides that it was Benson's obligation to provide Gar Gil with the title commitment.

[5] On March 13, 2007, the $200,000 held in escrow by Sierra was deposited in the registry of the court.

[6] Benson testified at trial that he paid taxes on the property throughout the course of the underlying proceedings.

3

2006; and (2) preventing Benson from receiving $10,000 in earnest money deposited earlier as liquidated damages.

Trial began on January 29, 2008. Prior to the second day of testimony, the trial court made an oral ruling that the contract was ambiguous as to whether time was of the essence. After three days of testimony, the jury concluded that: (1) Gar Gil and Benson both failed to comply with the contract; (2) Benson failed to comply with the contract first; (3) Gar Gil was not "ready, willing, and able to perform under the contract" or did not perform under the contract; (4) Benson was not entitled to any damages; and (5) the prevailing party was entitled to $33,485 in attorney's fees for preparation and trial, $8,000 in attorney's fees for an appeal to this Court, and $5,000 in attorney's fees for an appeal to the Texas Supreme Court. On April 11, 2008, the trial court confirmed the jury's verdict and stated in its final judgment that Gar Gil was entitled to recover the $10,000 in earnest money it paid to Sierra but that Benson was the prevailing party, thus entitling him the jury's award of attorney's fees.

Gar Gil filed a motion for new trial on April 24, 2008, arguing that: (1) it complied with the contract; (2) the contract did not specify that time was of the essence; (3) the evidence was factually insufficient to establish that Gar Gil was not "ready, willing, and able to perform under the contract" or did not perform under the contract; and (4) Benson was not entitled to the jury's award of attorney's fees because he was not the "prevailing party" and because the jury erroneously used the dollar figure submitted by Gar Gil's attorneys rather than the dollar figure submitted by Benson's attorneys. The trial court did not rule on Gar Gil's motion for new trial; therefore, it was overruled by operation of law. TEX. R. CIV. P. 329b(c). This appeal ensued.

4

## II. ANALYSIS

### A. Contract Ambiguity

In its first issue, Gar Gil contends that the trial court erred in concluding that the contract was ambiguous as to whether time was of the essence. Specifically, Gar Gil argues that the contract did not expressly state that time was of the essence; therefore, "the contract continued until either the seller [Benson] or the buyer [Gar Gil] performed and demanded performance on the other side."

The record reflects that the trial court's ruling that the contract was ambiguous as to whether time was of the essence was made outside the presence of the jury. Further, the jury charge did not contain an express question asking whether time was of the essence.[7] *See Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 129 (Tex. App.–Corpus Christi 2006, pet. denied) (holding that once the court determines that the contract is ambiguous, the interpretation of the instrument is a question of fact for the jury) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)). On appeal, Gar Gil does not argue that the jury was improperly charged, nor does it explain in its brief how the complained-of error, if any, caused the rendition of an improper judgment. *See* TEX. R. APP. P. 38.1(i), 44.1(a)(1). Accordingly, we find that Gar Gil has waived this issue. *See id.* at R. 38.1; *see also Boatright v. Tex. Am. Title Co.*, 790 S.W.2d 722, 727 (Tex. App.–El Paso 1990, writ dism'd) (holding that when a jury renders a verdict, any issue which has not been submitted to the jury is waived). We overrule Gar Gil's first issue.

---

[7] To the extent that the jury may have considered whether time was of the essence, we address it in our analysis of Gar Gil's second issue. *See infra* section II(B).

**B. Gar Gil's Specific Performance Claim**

In its second issue, Gar Gil asserts that the evidence supporting the jury's finding that Gar Gil was not "ready, willing, and able to perform under the contract" or did not perform under the contract is factually insufficient. Gar Gil argues that the evidence conclusively proved that Gar Gil had the money to pay Benson for the 15.763-acre tract of land on September 30, 2005, and that Gar Gil performed under the contract by depositing the entire purchase price with the title company and later in the registry of the court. Benson contends that the evidence demonstrated that Gar Gil was not "ready, willing, and able to perform" on the August 11, 2006 closing date provided in the contract.

**1. Standard of Review**

In reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence, and we should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In doing so, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). However, we may not substitute our own judgment for that of the trier of fact, even if we would have reached a different result on the evidence. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

**2. Applicable Law**

The equitable remedy of specific performance may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine*, 231 S.W.3d 530, 535 (Tex.

App.–Dallas 2007, pet. denied). However, a party seeking specific performance must plead and prove: (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation; and (2) the readiness, willingness, and ability to perform at relevant times. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008). When contested fact issues must be resolved before a court can determine the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury resolve the disputed fact issues. *DiGiuseppe*, 269 S.W.3d at 596; *Stafford*, 231 S.W.3d at 536 (citing *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999)).

In addressing a party's readiness, willingness, and ability to perform, it has been recognized that "'[t]he doctrine is fundamental that a party seeking the remedy of specific performance . . . must show himself to have been ready, desirous, prompt, and eager.' These principles have been long recognized and respected by the Courts of Texas." *DiGiuseppe*, 269 S.W.3d at 593 (quoting *Ratcliffe v. Mahres*, 122 S.W.2d 718, 721-22 (Tex. Civ. App.–El Paso 1938, writ ref'd)).

> "[T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness[,] and ability is a continuing one that extends to all times relevant to the contract and thereafter."

*Id.* (quoting 25 RICHARD A. LORD, WILLISTON ON CONTRACTS § 67:15, at 236-37 (4th ed. 2002) (citations omitted)).

### 3. Discussion

On appeal, Gar Gil argues that, because the jury concluded that Benson breached the contract first and because Benson allegedly did not notify Gar Gil of his intent to

7

terminate the contract, Gar Gil was entitled to fulfill its contractual obligations after the specified closing date.[8] Gar Gil specifically notes that it fully performed under the contract by tendering the full purchase price on September 7, 2006. In support of its contention, Gar Gil directs us to two checks tendered to Sierra which, when added together, amounted to the $200,000 purchase price. The first check, dated March 8, 2006, was in the amount of $10,000 and fulfilled Gar Gil's earnest money obligations. The second check, dated September 7, 2006, was in the amount of $190,000 and constituted the remaining money owed for the property.

However, at trial, Garcia admitted that he had initialed the page of the contract which stated that the closing date was August 11, 2006, and that he did not tender the remaining money owed for the purchase of the land—$190,000 ($200,000 purchase price minus $10,000 in earnest money already deposited)—on or before August 11, 2006. This undermines Garcia's later testimony that Gar Gil was ready, willing, and able to tender the full purchase price at all times. *See DiGiuseppe*, 269 S.W.3d at 593; *see also Ratcliffe*, 122 S.W.2d at 721-22. Other than Garcia's unsubstantiated assertion that Benson requested that the parties close on the property on September 30, 2006, Gar Gil does not explain why it chose to ignore the August 11, 2006 closing date contained in the contract.

---

[8] Both Benson and Edwin N. Fulgham III, president of Sierra, testified that Benson notified Gar Gil of Benson's intent to terminate the contract. Garcia stated that he never received notice of Benson's intent to terminate the contract and that was why Gar Gil tendered the full purchase price for the property after the August 11, 2006 closing date. The record contains a letter, dated October 24, 2006, from Benson's counsel to Sierra indicating Benson's intent to terminate the contract and requesting that Sierra issue him a check for the $10,000 in earnest money paid by Gar Gil. At trial, both Benson and Fulgham were somewhat vague about when Benson conveyed his intent to terminate the contract, stating that Benson terminated the contract shortly after the August 11, 2006 closing date. However, the reconciling of this testimony was within the province of the jury when it was deciding whether Gar Gil was ready, willing, and able to perform under the contract. *See Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 73 (Tex. App.–Corpus Christi 2001, no pet.). Further, Benson conceded at trial that Gar Gil should be entitled to receive the $10,000 in earnest money.

Moreover, Edwin N. Fulgham III, president of Sierra, testified that Gar Gil did not contact Sierra or attempt to effectuate closing on the property by tendering the purchase price for the land on or before August 11, 2006, as required by the contract.

Regardless, Gar Gil's arguments touch on the jury's role as the fact finder. It was the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to the testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 73 (Tex. App.–Corpus Christi 2001, no pet.). We find that the jury's verdict is not against the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust; thus, the evidence supporting the jury's verdict is factually sufficient. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule Gar Gil's second issue.

## C. Prevailing Party and Attorney's Fees

In its third issue on appeal, Gar Gil argues that the trial court erred in: (1) determining that Benson was the prevailing party; and (2) awarding Benson attorney's fees. Gar Gil asserts that because the jury concluded that Benson had breached the contract first, Gar Gil had, in fact, prevailed on the merits of the case and that Benson was not entitled to attorney's fees as the prevailing party. Gar Gil also argues that Benson was awarded the wrong amount of attorney's fees. Benson contends that he prevailed on the merits because the jury concluded that he was entitled to keep the 15.763-acre tract; thus, he successfully defended against Gar Gil's claim for specific performance under the contract.

### 1. Standard of Review

An award of attorney's fees is reviewed under an abuse of discretion standard. *Dail*

*v. Couch*, 99 S.W.3d 390, 391 (Tex. App.–Corpus Christi 2003, no pet.). The test for abuse of discretion is to determine whether the trial court acted without reference to any guiding rules or principles, or whether under the circumstances of the case, the trial court's actions were arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

### 2. Discussion

Section 38.001(8) of the civil practice and remedies code permits an award of attorney's fees for a suit based on a written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2008). However, "[t]o recover attorney's fees under [section] 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages . . . ." *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Under Texas law, a "prevailing party" is a party who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even if not to the extent of its original contention. *Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 441 (Tex. App.–Corpus Christi 1983, no writ); *see Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 564 (Tex. App.–Texarkana 2003, pet. denied); *Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.–Austin 1995, writ denied) ("[A] prevailing party is one who is vindicated by the judgments rendered."). Determining whether a party is the prevailing or successful party must be based upon the success on the merits and not on whether or not damages were awarded. *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 749 (Tex. App.–Fort Worth 2005, no pet.); *Scholl v. Home Owners Warranty Corp.*, 810 S.W.2d 464, 468 (Tex. App.–San Antonio 1991, no writ); *Perez v. Baker Packers*, 694 S.W.2d 138, 143

(Tex. App.–Houston [14th Dist.] 1985, writ ref'd n.r.e.) (noting that lawsuits are not, at their core, about the recovery of damages; they are about the vindication of a civil claim on the merits).

### 3. Discussion

Prior to submitting the case to the jury, counsel for both Gar Gil and Benson submitted requests for attorney's fees. Benson's counsel requested attorney's fees in the amount of: (1) $39,530 for preparation and trial; (2) $15,000 for an appeal to this Court; and (3) $10,000 for an appeal to the Texas Supreme Court. Counsel for Gar Gil requested attorney's fees in the amount of: (1) $33,485 for preparation and trial; (2) $8,000 for an appeal to this Court; and (3) $5,000 for an appeal to the Texas Supreme Court. The jury concluded that Benson should take nothing as to his counterclaim and awarded to the "prevailing party" attorney's fees which were identical to those requested by Gar Gil's counsel. The trial court then determined that Benson was the prevailing party and awarded him the amount of attorney's fees specified by the jury.

Even though the jury did not award Benson any damages on his counterclaim, our analysis as to who was the prevailing party is centered on which party succeeded on the merits, not on which party was awarded damages. *See Head*, 159 S.W.3d at 749; *Scholl*, 810 S.W.2d at 468; *Perez*, 694 S.W.2d at 143. The core of Gar Gil's lawsuit was breach of contract, seeking specific performance or, in other words, transfer of title of the property from Benson to Gar Gil. The jury concluded that Benson and Gar Gil both breached the contract and that Benson breached the contract first. However, the jury did not conclude that Gar Gil was entitled to specific performance and Benson was allowed to keep his property. We conclude that because Benson successfully defended Gar Gil's claim for

11

specific performance and was allowed to keep his property, the trial court did not err in determining that Benson was the prevailing party in this matter. *See Head*, 159 S.W.3d at 749; *Scholl*, 810 S.W.2d at 468; *Perez*, 694 S.W.2d at 143. However, because Benson was not awarded any damages, we conclude that he is not entitled to reasonable attorney's fees under section 38.001 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *see also Solis*, 951 S.W.2d at 390. As a result, we conclude that the trial court abused its discretion in awarding attorney's fees to Benson. *See Dail*, 99 S.W.3d at 391. Accordingly, Gar Gil's third issue is sustained.

### III. CONCLUSION

We affirm in part and reverse and render in part.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 25th day of June, 2009.

12