NUMBER 13-08-00432-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


GAR GIL, L.L.C., Appellant,


v.
 


ARNOLD BENSON, Appellee.

 




On appeal from the 138th District Court of Cameron County, Texas.


 




MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza


 

 Appellant, Gar Gil, L.L.C., filed an action for breach of a real estate contract,
seeking specific performance. The case was tried to a jury, and a verdict was rendered
in favor of appellee, Arnold Benson. On appeal, Gar Gil argues that: (1) the trial court
erred in determining that the contract was ambiguous as to whether time was of the
essence; (2) the evidence supporting the jury's finding that Gar Gil was not "ready, willing,
and able to perform the contract" is factually insufficient; and (3) the trial court erred in
concluding that Benson was the prevailing party and awarding Benson attorney's fees. We
affirm in part and reverse and render in part.

I. Background


 Gar Gil is a development company that develops properties to sell as individual
residential lots. On or about September 30, 2005, Benson entered into a standard, written
farm and ranch contract to sell to Gar Gil a 15.763-acre tract of land located in Cameron
County, Texas. Prior to executing the contract for the 15.763-acre tract of land, Gar Gil
and Benson entered into a separate contract for the sale of approximately 120 acres. (1) On
September 30, 2005, Gar Gil and Benson closed on the 120-acre tract of land. Gilberto V.
Garcia, member and president of Gar Gil, testified that on September 30, 2005, Gar Gil
had the purchase money for both properties and that the title company, Sierra Title
Company ("Sierra"), (2) had the funds for both tracts of land. Garcia further testified that at
the closing for the 120-acre tract, Benson requested that the parties delay the sale of the
15.763-acre tract for one year from September 30, 2005, so that Benson could receive a
more favorable tax treatment on the proceeds from the sale. Garcia stated that Gar Gil
agreed to close on the 15.763-acre tract on September 30, 2006.

 Despite the alleged agreement to close on the 15.763-acre tract on September 30,
2006, the written contract covering the land indicated that the closing date would be on
August 11, 2006. (3) The parties did not close on the contract on August 11, 2006. Gar Gil
alleges that Sierra was not ready to close on that date, and that Sierra did not call either
party to apprise them of the situation. Neither Benson nor Gar Gil showed up for closing,
and Gar Gil did not deposit any money with Sierra at that time. Sierra subsequently gave
Gar Gil the title commitment to the land on August 29, 2006. (4) 

 Realizing that the August 11, 2006 closing date had come and gone and that
Benson allegedly had not indicated a desire to terminate the contract, Gar Gil tendered the
full purchase price of $200,000 for the land on September 7, 2006, to be held in escrow
by Sierra. (5) Benson refused to perform his part of the contract after Gar Gil tendered the
full purchase price for the land, and Benson sought to terminate the contract. Several days
after tendering the purchase price for the land, Gar Gil took possession of the land;
however, Benson refused to convey fee simple title to the land to Gar Gil. (6) Gar Gil
currently maintains possession of the land and has made several improvements to the
land.

 Gar Gil sued Benson for breach of contract and promissory estoppel, seeking
specific performance. Benson counterclaimed, arguing that Gar Gil breached the
September 30, 2005 contract by: (1) failing to close on the land on or before August 11,
2006; and (2) preventing Benson from receiving $10,000 in earnest money deposited
earlier as liquidated damages. 

 Trial began on January 29, 2008. Prior to the second day of testimony, the trial
court made an oral ruling that the contract was ambiguous as to whether time was of the
essence. After three days of testimony, the jury concluded that: (1) Gar Gil and Benson
both failed to comply with the contract; (2) Benson failed to comply with the contract first;
(3) Gar Gil was not "ready, willing, and able to perform under the contract" or did not
perform under the contract; (4) Benson was not entitled to any damages; and (5) the
prevailing party was entitled to $33,485 in attorney's fees for preparation and trial, $8,000
in attorney's fees for an appeal to this Court, and $5,000 in attorney's fees for an appeal
to the Texas Supreme Court. On April 11, 2008, the trial court confirmed the jury's verdict
and stated in its final judgment that Gar Gil was entitled to recover the $10,000 in earnest
money it paid to Sierra but that Benson was the prevailing party, thus entitling him the jury's
award of attorney's fees.

 Gar Gil filed a motion for new trial on April 24, 2008, arguing that: (1) it complied
with the contract; (2) the contract did not specify that time was of the essence; (3) the
evidence was factually insufficient to establish that Gar Gil was not "ready, willing, and able
to perform under the contract" or did not perform under the contract; and (4) Benson was
not entitled to the jury's award of attorney's fees because he was not the "prevailing party"
and because the jury erroneously used the dollar figure submitted by Gar Gil's attorneys
rather than the dollar figure submitted by Benson's attorneys. The trial court did not rule
on Gar Gil's motion for new trial; therefore, it was overruled by operation of law. Tex. R.
Civ. P. 329b(c). This appeal ensued.

II. Analysis


A. Contract Ambiguity


 In its first issue, Gar Gil contends that the trial court erred in concluding that the
contract was ambiguous as to whether time was of the essence. Specifically, Gar Gil
argues that the contract did not expressly state that time was of the essence; therefore,
"the contract continued until either the seller [Benson] or the buyer [Gar Gil] performed and
demanded performance on the other side." 

 The record reflects that the trial court's ruling that the contract was ambiguous as
to whether time was of the essence was made outside the presence of the jury. Further,
the jury charge did not contain an express question asking whether time was of the
essence. (7) See Barrand, Inc. v. Whataburger, Inc., 214 S.W.3d 122, 129 (Tex.
App.-Corpus Christi 2006, pet. denied) (holding that once the court determines that the
contract is ambiguous, the interpretation of the instrument is a question of fact for the jury)
(citing Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987)). On appeal, Gar
Gil does not argue that the jury was improperly charged, nor does it explain in its brief how
the complained-of error, if any, caused the rendition of an improper judgment. See Tex.
R. App. P. 38.1(i), 44.1(a)(1). Accordingly, we find that Gar Gil has waived this issue. See
id. at R. 38.1; see also Boatright v. Tex. Am. Title Co., 790 S.W.2d 722, 727 (Tex. App.-El
Paso 1990, writ dism'd) (holding that when a jury renders a verdict, any issue which has
not been submitted to the jury is waived). We overrule Gar Gil's first issue. 


B. Gar Gil's Specific Performance Claim


 In its second issue, Gar Gil asserts that the evidence supporting the jury's finding
that Gar Gil was not "ready, willing, and able to perform under the contract" or did not
perform under the contract is factually insufficient. Gar Gil argues that the evidence
conclusively proved that Gar Gil had the money to pay Benson for the 15.763-acre tract
of land on September 30, 2005, and that Gar Gil performed under the contract by
depositing the entire purchase price with the title company and later in the registry of the
court. Benson contends that the evidence demonstrated that Gar Gil was not "ready,
willing, and able to perform" on the August 11, 2006 closing date provided in the contract. 

 1. Standard of Review

 In reviewing the factual sufficiency of the evidence, we must consider and weigh all
the evidence, and we should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In doing so, we must "detail the
evidence relevant to the issue" and "state in what regard the contrary evidence greatly
outweighs the evidence in support of the verdict." Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001). However, we may not substitute our own judgment for that of the
trier of fact, even if we would have reached a different result on the evidence. Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).

 2. Applicable Law


 The equitable remedy of specific performance may be awarded upon a showing of
breach of contract. Stafford v. S. Vanity Magazine, 231 S.W.3d 530, 535 (Tex.
App.-Dallas 2007, pet. denied). However, a party seeking specific performance must
plead and prove: (1) compliance with the contract including tender of performance unless
excused by the defendant's breach or repudiation; and (2) the readiness, willingness, and
ability to perform at relevant times. DiGiuseppe v. Lawler, 269 S.W.3d 588, 593-94, 601
(Tex. 2008). When contested fact issues must be resolved before a court can determine
the expediency, necessity, or propriety of equitable relief, a party is entitled to have a jury
resolve the disputed fact issues. DiGiuseppe, 269 S.W.3d at 596; Stafford, 231 S.W.3d
at 536 (citing Burrow v. Arce, 997 S.W.2d 229, 245 (Tex. 1999)). 

 In addressing a party's readiness, willingness, and ability to perform, it has been
recognized that "'[t]he doctrine is fundamental that a party seeking the remedy of specific
performance . . . must show himself to have been ready, desirous, prompt, and eager.' 
These principles have been long recognized and respected by the Courts of Texas." 
DiGiuseppe, 269 S.W.3d at 593 (quoting Ratcliffe v. Mahres, 122 S.W.2d 718, 721-22
(Tex. Civ. App.-El Paso 1938, writ ref'd)). 

 "[T]o be entitled to specific performance, the plaintiff must show that it has
substantially performed its part of the contract, and that it is able to continue
performing its part of the agreement. The plaintiff's burden of proving
readiness, willingness[,] and ability is a continuing one that extends to all
times relevant to the contract and thereafter." 


Id. (quoting 25 Richard A. Lord, Williston on Contracts § 67:15, at 236-37 (4th ed.
2002) (citations omitted)).

 3. Discussion

 On appeal, Gar Gil argues that, because the jury concluded that Benson breached
the contract first and because Benson allegedly did not notify Gar Gil of his intent to
terminate the contract, Gar Gil was entitled to fulfill its contractual obligations after the
specified closing date. (8) Gar Gil specifically notes that it fully performed under the contract
by tendering the full purchase price on September 7, 2006. In support of its contention,
Gar Gil directs us to two checks tendered to Sierra which, when added together, amounted
to the $200,000 purchase price. The first check, dated March 8, 2006, was in the amount
of $10,000 and fulfilled Gar Gil's earnest money obligations. The second check, dated
September 7, 2006, was in the amount of $190,000 and constituted the remaining money
owed for the property.

 However, at trial, Garcia admitted that he had initialed the page of the contract
which stated that the closing date was August 11, 2006, and that he did not tender the
remaining money owed for the purchase of the land--$190,000 ($200,000 purchase price
minus $10,000 in earnest money already deposited)--on or before August 11, 2006. This
undermines Garcia's later testimony that Gar Gil was ready, willing, and able to tender the
full purchase price at all times. See DiGiuseppe, 269 S.W.3d at 593; see also Ratcliffe,
122 S.W.2d at 721-22. Other than Garcia's unsubstantiated assertion that Benson
requested that the parties close on the property on September 30, 2006, Gar Gil does not
explain why it chose to ignore the August 11, 2006 closing date contained in the contract. 
Moreover, Edwin N. Fulgham III, president of Sierra, testified that Gar Gil did not contact
Sierra or attempt to effectuate closing on the property by tendering the purchase price for
the land on or before August 11, 2006, as required by the contract. 

 Regardless, Gar Gil's arguments touch on the jury's role as the fact finder. It was
the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be
given to the testimony, and to resolve inconsistencies within or conflicts among the
witnesses' testimony. Reyna v. First Nat'l Bank in Edinburg, 55 S.W.3d 58, 73 (Tex.
App.-Corpus Christi 2001, no pet.). We find that the jury's verdict is not against the
overwhelming weight of the evidence as to be clearly wrong or manifestly unjust; thus, the
evidence supporting the jury's verdict is factually sufficient. See Cain, 709 S.W.2d at 176. 
Accordingly, we overrule Gar Gil's second issue. 


C. Prevailing Party and Attorney's Fees


 In its third issue on appeal, Gar Gil argues that the trial court erred in: (1)
determining that Benson was the prevailing party; and (2) awarding Benson attorney's fees. 
Gar Gil asserts that because the jury concluded that Benson had breached the contract
first, Gar Gil had, in fact, prevailed on the merits of the case and that Benson was not
entitled to attorney's fees as the prevailing party. Gar Gil also argues that Benson was
awarded the wrong amount of attorney's fees. Benson contends that he prevailed on the
merits because the jury concluded that he was entitled to keep the 15.763-acre tract; thus,
he successfully defended against Gar Gil's claim for specific performance under the
contract.


 1. Standard of Review 


 An award of attorney's fees is reviewed under an abuse of discretion standard. Dail
v. Couch, 99 S.W.3d 390, 391 (Tex. App.-Corpus Christi 2003, no pet.). The test for
abuse of discretion is to determine whether the trial court acted without reference to any
guiding rules or principles, or whether under the circumstances of the case, the trial court's
actions were arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985).

 

 2. Discussion


 Section 38.001(8) of the civil practice and remedies code permits an award of
attorney's fees for a suit based on a written contract. See Tex. Civ. Prac. & Rem. Code
Ann. § 38.001(8) (Vernon 2008). However, "[t]o recover attorney's fees under [section]
38.001, a party must (1) prevail on a cause of action for which attorney's fees are
recoverable, and (2) recover damages . . . ." Green Int'l v. Solis, 951 S.W.2d 384, 390
(Tex. 1997).

 Under Texas law, a "prevailing party" is a party who successfully prosecutes the
action or successfully defends against it, prevailing on the main issue, even if not to the
extent of its original contention. Hoffman v. Deck Masters, Inc., 662 S.W.2d 438, 441 (Tex.
App.-Corpus Christi 1983, no writ); see Flagship Hotel, Ltd. v. City of Galveston, 117
S.W.3d 552, 564 (Tex. App.-Texarkana 2003, pet. denied); Dear v. City of Irving, 902
S.W.2d 731, 739 (Tex. App.-Austin 1995, writ denied) ("[A] prevailing party is one who is
vindicated by the judgments rendered."). Determining whether a party is the prevailing or
successful party must be based upon the success on the merits and not on whether or not
damages were awarded. Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 749 (Tex.
App.-Fort Worth 2005, no pet.); Scholl v. Home Owners Warranty Corp., 810 S.W.2d 464,
468 (Tex. App.-San Antonio 1991, no writ); Perez v. Baker Packers, 694 S.W.2d 138, 143
(Tex. App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) (noting that lawsuits are not, at their
core, about the recovery of damages; they are about the vindication of a civil claim on the
merits).

 3. Discussion

 Prior to submitting the case to the jury, counsel for both Gar Gil and Benson
submitted requests for attorney's fees. Benson's counsel requested attorney's fees in the
amount of: (1) $39,530 for preparation and trial; (2) $15,000 for an appeal to this Court;
and (3) $10,000 for an appeal to the Texas Supreme Court. Counsel for Gar Gil requested
attorney's fees in the amount of: (1) $33,485 for preparation and trial; (2) $8,000 for an
appeal to this Court; and (3) $5,000 for an appeal to the Texas Supreme Court. The jury
concluded that Benson should take nothing as to his counterclaim and awarded to the
"prevailing party" attorney's fees which were identical to those requested by Gar Gil's
counsel. The trial court then determined that Benson was the prevailing party and awarded
him the amount of attorney's fees specified by the jury.

 Even though the jury did not award Benson any damages on his counterclaim, our
analysis as to who was the prevailing party is centered on which party succeeded on the
merits, not on which party was awarded damages. See Head, 159 S.W.3d at 749; Scholl,
810 S.W.2d at 468; Perez, 694 S.W.2d at 143. The core of Gar Gil's lawsuit was breach
of contract, seeking specific performance or, in other words, transfer of title of the property
from Benson to Gar Gil. The jury concluded that Benson and Gar Gil both breached the
contract and that Benson breached the contract first. However, the jury did not conclude
that Gar Gil was entitled to specific performance and Benson was allowed to keep his
property. We conclude that because Benson successfully defended Gar Gil's claim for
specific performance and was allowed to keep his property, the trial court did not err in
determining that Benson was the prevailing party in this matter. See Head, 159 S.W.3d
at 749; Scholl, 810 S.W.2d at 468; Perez, 694 S.W.2d at 143. However, because Benson
was not awarded any damages, we conclude that he is not entitled to reasonable
attorney's fees under section 38.001 of the civil practice and remedies code. See Tex. Civ.
Prac. & Rem. Code Ann. § 38.001(8); see also Solis, 951 S.W.2d at 390. As a result, we
conclude that the trial court abused its discretion in awarding attorney's fees to Benson. 
See Dail, 99 S.W.3d at 391. Accordingly, Gar Gil's third issue is sustained. 


III. Conclusion


 We affirm in part and reverse and render in part.



 _______________________

 DORI CONTRERAS GARZA,

 Justice

 

Memorandum Opinion delivered and 

filed this the 25th day of June, 2009.



 
1. On appeal, Gar Gil contends that the purchase of the 120-acre tract of land was conditioned on the
subsequent sale of the 15.763-acre tract. In support of this contention, Gar Gil directs us to the testimony of
Gilberto V. Garcia. However, in his testimony, Garcia did not state that the purchase of the 120-acre tract was
conditioned on the sale of the 15.763-acre tract. 
2. Initially, Sierra was a party to this matter; however, Sierra was later non-suited.
3. Gar Gil and Benson initialed each page of the contract covering the 15.763-acre tract of land,
acknowledging that they understood the terms of the contract and that they agreed to be bound by the
contract.
4. Paragraph 6(B) of the contract provides that it was Benson's obligation to provide Gar Gil with the
title commitment.
5. On March 13, 2007, the $200,000 held in escrow by Sierra was deposited in the registry of the court.
6. Benson testified at trial that he paid taxes on the property throughout the course of the underlying
proceedings.
7. To the extent that the jury may have considered whether time was of the essence, we address it in
our analysis of Gar Gil's second issue. See infra section II(B).
8. Both Benson and Edwin N. Fulgham III, president of Sierra, testified that Benson notified Gar Gil of
Benson's intent to terminate the contract. Garcia stated that he never received notice of Benson's intent to
terminate the contract and that was why Gar Gil tendered the full purchase price for the property after the
August 11, 2006 closing date. The record contains a letter, dated October 24, 2006, from Benson's counsel
to Sierra indicating Benson's intent to terminate the contract and requesting that Sierra issue him a check for
the $10,000 in earnest money paid by Gar Gil. At trial, both Benson and Fulgham were somewhat vague
about when Benson conveyed his intent to terminate the contract, stating that Benson terminated the contract
shortly after the August 11, 2006 closing date. However, the reconciling of this testimony was within the
province of the jury when it was deciding whether Gar Gil was ready, willing, and able to perform under the
contract. See Reyna v. First Nat'l Bank in Edinburg, 55 S.W.3d 58, 73 (Tex. App.-Corpus Christi 2001, no
pet.). Further, Benson conceded at trial that Gar Gil should be entitled to receive the $10,000 in earnest
money.